*1058381150*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 12 2024

RICK WARREN
COURT CLERK
42 ____________

Sheriff Tommie Johnson III

2101 NE 36th STREET
Oklahoma City, OK 73111

# SHERIFF'S RETURN

STATE OF OKLAHOMA }
OKLAHOMA COUNTY

CIVIL CASE NUMBER: CJ-24-2320

Received:

Affidavit_____ Citation _______ Complaint _____ Execution _____ Motion _____ Decree______

Notice ____ Order ____Petition ____Summons X Subpoena _____ Waiver ____ Judgement ____

Writ _____ Replevin _____ Child Pick up Order______ Entry & Waiver _____ Declaration ________

Garnishment _____ Injunction_____ Exit Order _____ OTHER: ____________________________

Types of Service:

Personal Service _____ Residential ____ Corp Service X No Service _____ Recalled _____

Seized Property ______ Detained Person _____ Posted _____ Executed ________ Bad Address ______

I received this Writ this 10 day of APR 2024 at this time 0645 and executed the same on the 11 day of APR 2024 at 0854 this time serving: Served Charles Shepard in Legal

ADDRESS: 4345 N. Lincoln Blvd
OKC OK

Sheriff Fee's $50.00

TOMMIE JOHNSON III, SHERIFF

[signature]

~~DEPUTY~~ SEAN MCKEEHAN #121

Subscribed and Sworn to, before me this

_____Day of ______________, 2024

My Commission expires:_______________

______________________________

NOTARY PUBLIC, STATE OF OKLAHOMA

**Def's Exhibit 3**

IN THE DISTRICT COURT
FOR OKLAHOMA COUNTY, STATE OF OKLAHOMA

Daniel Saldivar, Michael Wolfe, Zurrell Hernandez, Christopher Hicks, Ronnie Smith II, Larry Pruitt, and Robert D. Johnson
Plaintiffs,

ORIGINAL

vs.

Case No. CJ - 2024 - 2320

Oklahoma Department of Corrections, Steven Harpe, Director, Oklahoma Department of Corrections, in his official and individual capacities; John/Jane Doe I, II, III, IV, (Employees/Agents of GPCC/DOC), in their official and individual capacities; John/Jane Doe V, VI, (Shift Supervisors and Administrators of GPCC), in their official and individual capacities,
Defendants.

**SUMMONS**

To The Above-Named Defendant, the **Oklahoma Department of Corrections**, an agency of the State of Oklahoma, by serving the Director, Deputy Director, the Attorney General of the State of Oklahoma or other Officer authorized by law to receive service of process for Defendant, wherever any such person(s) may be served. 3410 N MARTIN LUTHER KING OKLA CITY, OK

You have been sued by the above-named Plaintiffs, and you are directed to file a written answer to the attached Petition in this Court at the above address within twenty (20) days after service of this Summons upon you exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorneys for the Plaintiff. Unless you answer the Petition within the time stated, judgment will be rendered against you with costs of the action.

Issued this 9th day of April, 2024.

**RICK WARREN, Court Clerk**

**DISTRICT COURT CLERK**

By: ______________________
Deputy Court Clerk

Attorneys for Plaintiffs:
Richard C. Labarthe, OBA # 11393
Alexey V. Tarasov, OBA # 32926
LABARTHE & TARASOV
6303 N Portland Ave., Suite 210
Oklahoma City, Oklahoma 73112
(405) 843-5616; (405) 843-9685 Facsimile

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS

This Summons is being mailed/served on April ____, 2024.

______________________
Signature of Person Mailing/Serving Summons

**Def's Exhibit 3**

IN THE DISTRICT COURT
FOR OKLAHOMA COUNTY, STATE OF OKLAHOMA

Daniel Saldivar, Michael Wolfe, Zurrell Hernandez, Christopher Hicks, Ronnie Smith II, Larry Pruitt, and Robert D. Johnson
Plaintiffs,

vs.

Oklahoma Department of Corrections, Steven Harpe, Director, Oklahoma Department of Corrections, in his official and individual capacities; John/Jane Doe I, II, III, IV, (Employees/Agents of GPCC/DOC), in their official and individual capacities; John/Jane Doe V, VI, (Shift Supervisors and Administrators of GPCC), in their official and individual capacities,
Defendants.

COPY

Case No. CJ - 2024 - 2320

## SUMMONS

To The Above-Named Defendant, the **Oklahoma Department of Corrections**, an agency of the State of Oklahoma, by serving the Director, Deputy Director, the Attorney General of the State of Oklahoma or other Officer authorized by law to receive service of process for Defendant, wherever any such person(s) may be served. 3410 N Martin Luther King Okla City OK

You have been sued by the above-named Plaintiffs, and you are directed to file a written answer to the attached Petition in this Court at the above address within twenty (20) days after service of this Summons upon you exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorneys for the Plaintiff. Unless you answer the Petition within the time stated, judgment will be rendered against you with costs of the action.

Issued this 9th day of April, 2024.

RICK WARREN, Court Clerk
DISTRICT COURT CLERK

By: ______________________
Deputy Court Clerk

Attorneys for Plaintiffs:
Richard C. Labarthe, OBA # 11393
Alexey V. Tarasov, OBA # 32926
LABARTHE & TARASOV
6303 N Portland Ave., Suite 210
Oklahoma City, Oklahoma 73112
(405) 843-5616; (405) 843-9685 Facsimile

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS

This Summons is being mailed/served on April ____, 2024.

______________________________
Signature of Person Mailing/Serving Summons

Def's Exhibit 3

**IN THE DISTRICT COURT**
**FOR OKLAHOMA COUNTY, STATE OF OKLAHOMA**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR - 9 2024

RICK WARREN
COURT CLERK
41 ______

| | | |
|---|---|---|
| Daniel Saldivar, Michael Wolfe, Zurrell Hernandez, Christopher Hicks, Ronnie Smith II, Larry Pruitt, Robert D. Johnson<br><br>Plaintiff,<br><br>vs.<br><br>Oklahoma Department of Corrections, Steven Harpe, Director, Oklahoma Department of Corrections, in his official and individual capacities; John/Jane Doe I, II, III, IV, (Employees/Agents of GPCC/DOC), in their official and individual capacities; John/Jane Doe V, VI, (Shift Supervisors and Administrators of GPCC), in their official and individual capacities,<br><br>Defendants. | ) | Case No.: CJ - 2024 - 2320 |

**PETITION**

**COMES NOW** the Plaintiffs, Daniel Saldivar, Michael Wolfe, Zurrell Hernandez, Chris Hicks, Ronnie Smith II, Larry Pruitt, and Robert D. Johnson, by and through their attorneys of record, and hereby submit this Petition against Steven Harpe, Director, Oklahoma Department of Corrections (DOC), in his official and individual capacities; John/Jane Doe I, II, III, & IV (Employees/Agents of Great Plains Correctional Center/DOC), in their official and individual capacities; and John/Jane Doe V, VI (Shift Supervisors and Administrators at the Great Plains Correctional Center), also in their official and individual capacities. The Plaintiffs seek to address the grievous and unlawful treatment they endured while confined within the Great Plains Correctional Center (GPCC). This Petition is brought forth with the solemn duty to uphold the dignity and rights of those who, though confined, are entitled to the protections accorded by law.

Def's Exhibit 3

## INTRODUCTORY STATEMENT

1. In the searing days of August 2023, an unsettling tale of despair and neglect unfolded within the walls of the GPCC, where Inmate Daniel Saldivar, identified by the number ODOC# 738279, found himself a reluctant protagonist in a drama wrought by reckless and systemic indifference.

2. On the evening of August 15, 2023, Daniel Saldivar, shrouded in the gloom of a 3' x 3' shower cell to which he was confined for days, devoid of the comforts and basic dignities afforded to mankind, attempted to take his own life by hanging. This act, steeped in despair, was not the culmination of a long-held desire for death but a poignant cry for release from the unyielding grip of his punitive confines.

3. The shower cell filled with human feces had become Saldivar's abode for three harrowing days and four nights. Stripped of essentials, with the cold embrace of ceramic tiles as his only companion, Saldivar was subjected to conditions that would fray the fabric of any soul, resilient or otherwise.

4. Amidst the harrowing ordeal, the GPCC staff, bearing witness to the unfolding human tragedy, oscillated between complicit silence and feeble attempts to alleviate the suffering. Whispers of discontent and concern for basic human rights permeated the facility's halls, yet decisive action remained elusive.

5. The administrative response to this crisis, marred by ambiguity and inaction, only served to underscore the dire need for a thorough reevaluation of policies governing the treatment of those in isolation, particularly in the context of solitary confinement.

6. This Petition is an urgent call to action, a plea for justice and humanity in the face of institutional malaise. It is a narrative not merely of one man's struggle against the crushing weight of unjust confinement, but a broader commentary on the state of our correctional institutions.



Def's Exhibit 3

7. The plight of Inmate Saldivar is a clarion call for dignity, for the respect of human rights, and for the reclamation of the moral compass that guides our societal and judicial ethos.

8. So begins this solemn narrative, this quest for justice in the hallowed halls of law, where the echoes of Daniel Saldivar's plight reverberate with the promise of change. Echoing this are the similarly distressing experiences of fellow inmates Michael Wolfe (ODOC# 671170), Zurrell Hernandez (ODOC# 880425), Christopher Hicks (ODOC# 600267), Ronnie Smith II (ODOC# 573623), Larry Pruitt (ODOC# 258832), and Robert D. Johnson (ODOC# 760271), each bearing their own harrowing tales of dehumanizing treatment and systemic neglect within the same institution. Their collective experiences further underscore the gravity of the situation and amplify the need for immediate and sweeping reforms in the treatment of inmates within GPCC.

**PARTIES, JURISDICTION, AND VENUE**

9. The Plaintiff, Daniel Saldivar, who at all times relevant to this action, was incarcerated at the GPCC, is an inmate in the custody of the State of Oklahoma. He was subjected to the conditions and treatments alleged herein.

10. Co-Plaintiff, Michael Wolfe, also incarcerated at the GPCC during the relevant period, faced similar egregious conditions as alleged. He too is under the custody of the State of Oklahoma and endured comparable mistreatment.

11. Co-Plaintiff, Zurrell Hernandez, another inmate at GPCC, endured conditions akin to those faced by Daniel Saldivar. He was subjected to inhumane treatment while in the custody of the Oklahoma Department of Corrections.

12. Co-Plaintiff, Christopher Hicks, was similarly incarcerated at GPCC and experienced treatment and conditions parallel to those alleged by Daniel Saldivar. His experiences further highlight the systemic issues within the facility.



Def's Exhibit 3

13. Co-Plaintiff, Ronnie Smith II, was an inmate at GPCC and faced conditions and treatment that mirror the allegations made in this petition. He too was under the custody of the State of Oklahoma during this period.

14. Co-Plaintiff, Larry Pruitt, also a resident of GPCC during the relevant time, experienced severe and unjust treatment akin to that described by Daniel Saldivar. His experiences serve to further validate the allegations of systemic neglect and abuse within GPCC.

15. Co-Plaintiff, Robert D. Johnson, who was incarcerated alongside the other plaintiffs at GPCC, endured similar degrading treatment and conditions, underscoring the pervasive nature of the issues within the correctional facility.

16. Steven Harpe, the current Director of the Oklahoma Department of Corrections, assumed this role in October 2022. He is sued in his official and individual capacities. Director Harpe is responsible for overseeing the operations of the state's prison facilities, including GPCC and other correctional facilities within the State of Oklahoma, acting under the color of state law and state policies.

17. Defendants John/Jane Doe I, II, III, & IV, at all relevant times hereto, were employees or agents of GPCC and/or DOC, whose identities are currently unknown but who were directly involved in, or responsible for, the conditions, treatment, and decisions impacting Inmate Daniel Saldivar and others within the SMU shower cells. These Defendants are sued in their official and individual capacities.

18. Defendants, John/Jane Doe V, VI, Shift Supervisors and Administrators of GPCC, at all relevant times hereto, were responsible for the oversight, policy implementation, and day-to-day operations of the GPCC, particularly regarding the use of Special Management Unit (SMU) shower cells and the treatment of inmates therein. These Defendants are sued in their official and individual capacities.



Def's Exhibit 3

19. Jurisdiction and venue of this action lies in Oklahoma County because the ODOC is headquartered in Oklahoma County.

## FACTUAL ALLEGATIONS

20. The Plaintiffs reallege and incorporate by reference all of the paragraphs, as though fully set forth herein.

21. Daniel Saldivar, formerly a resident of Tulsa, was convicted by a jury for the sexual abuse of two minor relatives, ages 12 and 11, in 2014. This conviction was handed down on April 4, 2016.

22. Saldivar declined a plea deal offered by the district attorney, which would have resulted in approximately 37 years of imprisonment.

23. As a result of his refusal to accept the plea deal and his conviction at trial, the court imposed a sentence of 175 years on Saldivar. This sentence pertained to five counts of child sexual assault.

24. Following his conviction and sentencing, Saldivar was incarcerated and became subject to the policies and conditions of the correctional facility where he was held. His treatment, particularly his confinement in a shower stall at the GPCC, forms the basis of this legal action and request for redress.

25. After his transfer to the Great Plains Correctional Center from another facility at Holdenville, Plaintiff Saldivar was initially placed in a cell housing eight inmates, each in possession of homemade knives.

26. Fearing for his safety amidst the potential for violent confrontations involving these weapons, Saldivar requested a transfer from this cell.

27. Even though Saldivar has not been cited for any disciplinary infractions on his part while at the GPCC, the response to his request was a transfer to a shower stall, a space marred by unsanitary conditions, including feces on the floor.



Def's Exhibit 3

28. In this small, confined shower stall, Saldivar found himself without clothing, compelled to relieve himself in the same area where he stood, exacerbating the already deplorable conditions.

29. Saldivar asked prison workers, including Defendants, to explain to him why he was placed into these deplorable conditions of confinement. The only response he heard was one prison worker telling a colleague something to the effect that "He's a sex offender."

30. The frigid environment of the stall contributed to his discomfort, with Saldivar experiencing severe cold due to the lack of proper clothing and amenities.

31. A fellow inmate, recognizing his plight, offered him a shirt, which provided minimal relief from the cold.

32. As his time in the shower stall extended, Saldivar's desperation grew, eventually leading him to use the shirt in an attempt to commit suicide.

33. This suicide attempt prompted his removal from the shower stall, bringing his ordeal to an end after four harrowing nights.

34. During his confinement, Saldivar observed at least two other inmates in adjacent shower stalls, subjected to similar inhumane conditions.

35. Notably, Saldivar's prolonged stay in the shower stall was longer than that of these other inmates.

36. Other inmates similarly suffered in these cells, with instances of being locked up for extended periods without restroom breaks, highlighting the widespread nature of this issue.

37. Michael Wolfe, a Native American serving a life sentence for first-degree murder, has similarly suffered human rights abuses during his incarceration.

38. Inmate Wolfe has a history of asthma and has faced mental health challenges, including two suicide attempts.

39. Mr. Wolfe was locked in the showers four times, exacerbating his mental and physical suffering, particularly during two nights in August.

40. Zurrell Hernandez, serving a 10-year sentence for rape and lewd acts, was locked in the shower three times for a 24-hour period.

41. Mr. Hernandez was physically abused, including being pepper-sprayed, prior to being placed in the shower stall. He faced mistreatment by a Correctional Officer with the last name of Tandy.

42. Inmate Hernandez suffered due to inadequate provisions in the shower, including encountering issues with scalding hot water and a lack of any cup or other vessel for drinking.

43. Inmate Christopher Hicks, a victim of a stabbing incident, was locked into a shower for 36 hours in mid-August.

44. Mr. Hicks experienced neglect, including inadequate food provision and overall neglect of basic needs.

45. Inmate Ronnie Smith II, a 43-year-old former Marine who served in Iraq, faced extreme punitive measures while serving a 16-year sentence for lewd acts with a child. Mr. Smith was confined in a 2' x 2' space for 42 hours.

46. Inmate Smith was segregated due to a conflict of personalities with another inmate, not for any disciplinary infraction. Mr. Smith's incarceration conditions were harsh and unjust.

47. Inmate Larry Pruitt, serving a life sentence for first-degree murder since 1997, experienced severe mistreatment in the Special Housing Unit (SHU). The SHU conditions lacked all basic necessities such as sheets, blankets, and mattresses.

48. Mr. Pruitt endured weeks without power, and insufficient food, as well as water.

49. Mr. Pruitt was placed into a shower for an extended time period while at the GPCC.

50. Inmate Pruitt was subjected to pepper spray attacks while in the shower.



**Def's Exhibit 3**

51. Inmate Robert D. Johnson, convicted of second-degree robbery, faced neglect and poor treatment during his incarceration and was locked in a shower stall in mid-August 2023.

52. Mr. Johnson suffered from stomach issues without medical attention.

53. While in the shower, Inmate Johnson was not provided with basic necessities and relied on other inmates for such basic things as cups for drinking.

54. Mr. Johnson spent weeks in the SHU, was denied restroom access, and faced delays for essential items such as clothes.

55. The practice of confining inmates in shower stalls was not an isolated incident but part of a systematic approach adopted by the Department of Corrections in the Great Plains correctional facility and, upon information and belief, across several other facilities.

56. This systemic practice, akin to an unofficial custom, involved the use of shower stalls for extended confinement, often without even a bucket for defecating or any drinking water save for scalding water from the shower. Indeed these makeshift *de facto* micro solitary confinement "cells" were devoid of ***any*** basic amenities, and in conditions that flagrantly violated human rights standards.

57. The conditions were recognized by some members of the prison staff as violations of civil and human rights under the standards set by the American Correctional Association (ACA).

58. Some sympathetic staff members attempted to address these harsh conditions, but faced internal conflict and ethical dilemmas, with some refusing to continue working under such conditions. In fact, the management at DOC and at Great Plains attempted to intimidate the honest correctional officers who saw the atrocities described herein, who refused to participate in such sadistic measures and who reported the events by completing incident reports.

59. Despite reports and concerns raised by staff members, there was a notable lack of decisive action or clear policy guidance from higher authorities at the GPCC or the DOC.



**Def's Exhibit 3**

60. The investigation into the treatment of inmates at the GPCC was initiated by Agent Joey Bales of the Office of the Inspector General, Oklahoma Department of Corrections (ODOC), starting on August 23, 2023.

61. This inquiry stemmed from escalating concerns about the widespread practice of inmates being locked in shower cells for extended periods without access to basic amenities, a situation starkly highlighted by the Plaintiffs' ordeal.

62. Agent Bales' investigative process began with a Case Entrance Briefing, issued on August 23, 2023, to lay the groundwork for a thorough exploration of the allegations.

63. As part of his investigation, Bales conducted a series of interviews with inmates and staff members, gathering firsthand accounts of the conditions and treatment in the Special Management Unit (SMU) shower cells.

64. Key findings from the investigation included the acknowledgment of inmates being left in shower cells longer than appropriate due to a lack of available beds and not as a punitive measure.

65. The investigation revealed that the overcrowding in the SMU, primarily caused by inmates refusing to house in eight-man cells, led to the unit being constantly full, with no vacancies, thereby exacerbating the situation.

66. Bales' interviews also highlighted a lack of consistency in documenting inmate movements and the use of shower cells, contributing to the confusion and mismanagement of inmate housing.

67. The investigation found that the practice of using shower cells for inmate housing was not exclusive to the GPCC ***but is a common procedure across multiple DOC facilities***.

68. Despite some efforts by staff to provide basic necessities to inmates in shower cells, there were instances where supervisors instructed staff to deny amenities as a form of discipline.



Def's Exhibit 3

69. As a result of the investigation, changes were implemented at the GPCC, discontinuing the use of shower cells for temporary holding of inmates and ensuring proper documentation for inmates sent to the SMU.

70. The investigation underscored the need for policy review and revision at the GPCC and within the DOC, particularly concerning the treatment of inmates and the use of solitary confinement or similar punitive measures.

71. Bales' findings highlighted the systemic issues within the facility, bringing to light the need for greater oversight and adherence to human rights standards in the treatment of inmates.

72. Agent Bales' interviews and investigation underscored the systemic issues within the GPCC, including the use of shower cells as a form of punishment, and the lack of effective response to inmate needs and staff concerns.

73. The comprehensive documentation and investigation into these practices at GPCC reveal a pattern of neglect and abuse, indicative of a broader institutional failure to uphold basic human rights standards in inmate treatment.

## CLAIMS FOR RELIEF

### First Claim

**42 U.S.C. §§ 1981 and 1983 Based on the Infliction of Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments to the Constitution of the United States Against All Defendants**

74. The Plaintiffs re-allege and incorporate by reference all of the above paragraphs, as though fully set forth herein.

75. Section 1983 states, in part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." To assert a valid claim under



Def's Exhibit 3

both § 1983 and § 1981, a plaintiff must satisfy two essential elements: (1) demonstrating a violation of a right protected by the Constitution or federal laws, and (2) establishing that the violation occurred at the hands of an individual acting under the authority of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In the case of *Bolden v. City of Topeka*, 441 F.3d 1129, 1134-37 (10th Cir. 2006), the Tenth Circuit acknowledged the precedent set by the United States Supreme Court in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989). In *Jett*, the Supreme Court established that § 1983 serves as the exclusive damages remedy for claims brought under § 1981 against state actors.

76. The "under color of state law" requirement mandates that the constitutional deprivation must have occurred as a result of official policy or established custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A plaintiff may still establish the existence of a widespread practice that, even if not formally sanctioned by written law or explicit policy, has become so ingrained and established that it effectively amounts to a "custom or usage." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

77. Defendants, including the GPCC officials, the DOC Director, and specific staff members (collectively "Defendants"), knew or should have known that the conditions of confinement in the SMU shower cells were inhumane, cruel, and unusual, posing a significant risk to the mental and physical well-being of the Plaintiff.

78. The Plaintiffs were subject to prolonged confinement in feces-laden shower cells, under conditions lacking basic amenities like restroom facilities, proper bedding, a space to sit or lie down, drinking water, as well as basic humane treatment, which amounted to cruel and unusual punishment.

79. Despite the obvious and egregious nature of these conditions, the Defendants showed deliberate indifference to the Plaintiffs' health, safety, and basic human rights.



Def's Exhibit 3

80. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered severe emotional distress, mental anguish, physical discomfort, and a degradation of their personal dignity.

81. There is an affirmative link between the Defendants' acts and/or omissions and the systemic practices and/or customs of using shower cells as a form of extended confinement across multiple DOC facilities.

82. Such policies, practices, and/or customs include, but are not limited to:

(a) The use of shower cells for extended inmate confinement without basic amenities.

(b) The systemic failure to address the inhumane conditions within the SMU shower cells.

(c) The lack of effective oversight and response to issues of inmate safety and well-being.

(d) The failure to provide adequate mental health support and interventions for inmates under extreme stress.

(e) The inadequate training of staff in recognizing and addressing the needs and rights of inmates.

(f) The persistent ignoring of the adverse effects of prolonged solitary confinement in conditions such as those in the SMU shower cells.

83. Defendants were aware or should have been aware that maintaining these policies, practices, and/or customs posed a significant risk to the health and safety of inmates like the Plaintiffs.

84. The Defendants disregarded these known and/or obvious risks, thereby exhibiting deliberate and willful indifference to the Plaintiffs' rights and welfare.

85. As a direct and proximate result of these policies, practices, and/or customs, the Plaintiffs endured severe physical and emotional suffering, which includes, but is not limited to, trauma, psychological harm, and a profound impact on their overall well-being.

86. At all relevant times, Defendants were acting under color of state law.



Def's Exhibit 3

87. The Defendants' actions and inactions led to a violation of the Plaintiffs' Eighth Amendment right to be free from *cruel and unusual punishment* and his Fourteenth Amendment rights.

88. As a result of the Defendants' actions, the Plaintiffs have suffered injury.

89. The Plaintiffs request a declaratory judgment that the Defendants' actions and policies violated their constitutional rights and an injunction to prevent future violations and to ensure the humane treatment of all inmates at GPCC.

**Second Claim**

**Supervisory Liability (42 U.S.C § 1983)**
**Against Supervisory Officials**

90. The Plaintiffs re-allege and incorporate by reference all of the above paragraphs, as though fully set forth herein.

91. The Supervisory Officials breached their duty to the Plaintiffs, which was the proximate cause of their injuries. Specifically, these officials were personally involved in the violations of the Plaintiffs' constitutional rights by allowing and perpetuating inhumane and flawed confinement practices. These include:

(a) Confining Plaintiffs in shower stalls for long periods of time under deplorable and unsanitary conditions, without basic amenities.
(b) Failing to provide drinking water.
(c) Failing to provide adequate clothing and protection from cold temperatures, contributing to the Plaintiffs' distress and discomfort.
(d) Overlooking the mental and physical health needs of inmates, leading to severe psychological stress and risk of self-harm.

92. The Supervisory Officials exercised control and discretion over other Defendants who ignored or facilitated the neglect and abuse of inmates. They failed to properly discipline and supervise employees or subcontractors who engaged in these actions and were aware of these violations of inmates' constitutional rights.



Def's Exhibit 3

93. These officials promulgated, created, implemented, and/or utilized policies that caused the deprivation of the Plaintiffs' rights. They knew, or it was obvious to them, that maintaining these policies, practices, and widespread customs, and failing to train and supervise staff properly, would result in violations similar to those experienced by the Plaintiffs.

94. Poorly trained and improperly supervised staff posed a known and immediate risk of abuse of power to the inmate population. The Supervisory Officials disregarded these known risks to inmates, including the Plaintiffs, and acquiesced in the continuation of such practices.

95. Staff at the correctional facility acted in accordance with the rules and procedures set by these Supervisory Officials. Alternatively, the staff acted as a result of the failure to be trained, supervised, or dismissed, leading to the damages incurred by the Plaintiffs.

96. As a direct and proximate result of the Supervisory Officials' actions, Plaintiffs suffered extreme mental anguish and physical harm, including the trauma of prolonged and inhumane confinement.

97. Plaintiffs seek a declaratory judgment affirming that the Defendants' conduct and established policies constituted a breach of their constitutional rights. Additionally, the Plaintiffs petition for an injunction aimed at prohibiting further infringements and mandating the humane treatment of all inmates housed at the GPCC/DOC.

## DAMAGES

98. Plaintiffs seek monetary damages from the Defendants in their personal capacities, as the actions and omissions of the Defendants were outside the bounds of their lawful authority and constituted egregious violations of the Plaintiffs' federally protected rights.

99. The conduct of Defendants was objectively unreasonable and was undertaken with deliberate indifference to the rights and safety of the Plaintiffs. As such, the Defendants are not entitled to qualified immunity.



Def's Exhibit 3

100. As a direct and proximate result of the Defendants' actions, the Plaintiffs suffered physical harm, emotional distress, and other compensable injuries. Therefore, Plaintiff is entitled to compensatory damages.

## PRAYER FOR RELIEF

**WHEREFORE**, considering the foregoing, Plaintiffs request the following relief:

1. A declaratory judgment recognizing that the actions and policies of the Defendants constituted a violation of the Plaintiffs' constitutional rights.
2. An injunction to prohibit any future breaches of constitutional rights and to ensure the humane treatment of all inmates at the Great Plains Correctional Center (GPCC).
3. A judgment against the Defendants in their personal capacities.
4. Such other relief as the Court deems just and proper under the circumstances.
5. No request for monetary damages is made in this pleading against any of the Defendants in their official capacities. The request for monetary damages is made only against the Defendants in their personal capacities.

Dated: April 9, 2024.

Respectfully submitted,

Richard C. Labarthe, OBA # 11393
Alexey V. Tarasov, OBA # 32926
LABARTHE & TARASOV, a professional association
6303 N. Portland Ave., Suite 210
Oklahoma City, Oklahoma 73112
(405) 843-5616; (405) 843-9685 Facsimile
richard@labarthelaw.com
330 W. Gray Street, Suite 208
Norman, OK 73069
(405) 410-5631; (832) 558-3540 Facsimile
alexey@tarasovlaw.com
**Attorneys for Plaintiff**



Def's Exhibit 3