**CASE NO. CIV-24-442-PRW**

---

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

---

**DANIEL SALDIVAR, MICHAEL WOLFE, ZURRELL HERNANDEZ,
CHRISTOPHER HICKS, RONNIE SMITH II, LARRY PRUITT,
ROBERT D. JOHNSON,**

**Plaintiffs,**

**v.**

**DEPARTMENT OF CORRECTIONS DIRECTOR, SCOTT CROW, in his official
and individual capacities; JOHN/JANE DOE I, II, III, IV, (Employees/ Agents of
GPCC/DOC), in their official and individual capacities; JOHN/JANE DOE V, VI,
(Shift Supervisors and Administrators of GPCC), in their official and individual
capacities,**

**Defendants.**

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

---

**LAUREN RAY, OBA#22694
LEXIE P. NORWOOD, OBA#31414
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
T: (405) 521-3921   F: (405) 521-4518
Email: lauren.ray@oag.ok.gov
Lexie.norwood@oag.ok.gov
*Attorneys for Defendants***

**August 8, 2024**

<u>**TABLE OF CONTENTS**</u>

**TABLE OF CONTENTS** ...................................................................................... i

**TABLE OF AUTHORITIES** ............................................................................. iii

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ...................................... 1

**BRIEF IN SUPPORT** ........................................................................................ 2

**STANDARD OF REVIEW** ................................................................................ 2

**STATEMENT OF THE CASE** ........................................................................... 2

**STATEMENT OF MATERIAL FACTS** ............................................................. 4

**ARGUMENT AND AUTHORITY** ...................................................................... 6

**PROPOSITION I: EVIDENCE ESTABLISHES PLAINTIFFS HAVE FAILED TO
EXHAUST ADMINISTRATIVE REMEDIES AVAILABLE** ...................................... 6

    **ODOC'S POLICY ON EXHAUSTION** ......................................................... 8

        Requests to Staff ............................................................................ 10
        Grievances ..................................................................................... 11
        Emergency Grievances .................................................................... 11

    **PLAINTIFF PRUITT** ................................................................................ 12

        RTS Submitted on 8.19.23 ............................................................. 12
        RTS's Submitted on 8.24.23 ........................................................... 12
        RTS Submitted on 8.27.23 ............................................................. 13
        RTS's Submitted on 8.31.23 ........................................................... 14
        RTS Submitted on 9.7.23 ............................................................... 15
        RTS's Submitted on 9.10.23 ........................................................... 15
        RTS Submitted on 9.12.23 ............................................................. 17
        RTS's Submitted on 9.13.23 ........................................................... 17
        RTS's Submitted on 9.18.23 ........................................................... 19
        RTS Submitted on 10.4.23 ............................................................. 20
        RTS Submitted on 10.25.23 ........................................................... 20
        RTS Submitted on 11.1.23 ............................................................. 21
        RTS Submitted on 11.8.23 ............................................................. 22
        RTS Submitted on 11.13.23 ........................................................... 22

RTS Submitted on 11.12.23 .................................................................. 23
RTS Submitted on 11.20.23 .................................................................. 24
RTS Submitted on 11.22.23 .................................................................. 24
RTS Submitted on 11.27.23 .................................................................. 25

**PLAINTIFF SMITH** ......................................................................... 25

RTS Submitted on 8.27.23 .................................................................... 25
RTS Submitted on 9.28.23 .................................................................... 26
RTS Submitted on 1.24.24 .................................................................... 27
RTS Submitted on 5.5.24 ..................................................................... 27
RTS Submitted on 5.20.24 .................................................................... 28
RTS Submitted on 5.31.24 .................................................................... 29
RTS Submitted on 6.20.24 .................................................................... 29
RTS Submitted on 7.8.24 ..................................................................... 30

**PLAINTIFF HICKS** .......................................................................... 31

RTS Submitted on 9.25.23 .................................................................... 31
RTS Submitted on 11.7.23 .................................................................... 31
RTS Submitted on 1.5.24 ..................................................................... 32

**PLAINTIFF WOLFE** ......................................................................... 32

RTS Submitted on 2.26.24 .................................................................... 32

**CONCLUSION** ............................................................................... 33

**CERTIFICATE OF SERVICE** .......................................................... 34

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Booth v. Churner*,
532 U.S. 731 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brewer v. Mullin*,
130 F.App'x 264 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jernigan v. Stuchell*,
304 F.3d 1030 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jones v. Bock*,
549 U.S. 199 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Little v. Jones*,
607 F.3d 1245 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*May v. Segovia*,
929 F.3d 1223 (10th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Porter v. Nussle*,
534 U.S. 516 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Stone v. Albert*,
2007 WL 4230702 (10th Cir. Dec. 3. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tal v. Hogan*,
453 F.3d 1244 (10th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Thomas v. Parker*,
609 F.3d 1114 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Whitington v. Oritz*,
472 F.3d 804 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Woodford v. Ngo*,
548 U.S. 81 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

## STATUTES

42 U.S.C. §1983 and §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6
42 U.S.C. § 1997e(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

## RULES

Fed. R. Civ. P. 25(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Fed. R. Civ. P. 56(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL SALDIVAR, MICHAEL WOLFE, ZURRELL HERNANDEZ, CHRISTOPHER HICKS, RONNIE SMITH II, LARRY PRUITT, ROBERT D. JOHNSON., <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF CORRECTIONS DIRECTOR, SCOTT CROW, in his official and individual capacities; JOHN/JANE DOE I, II, III, IV, (Employees/ Agents of GPCC/DOC), in their official and individual capacities; JOHN/JANE DOE V, VI, (Shift Supervisors and Administrators of GPCC), in their official and individual capacities, <br><br> Defendant. | **CASE NO. CIV-24-442-PRW** <br> **(Removed from Oklahoma County District Court Case No: CJ-2024-2320)** |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendants, Oklahoma Department of Corrections (ODOC), Steve Harpe[1] (Harpe), in his official capacity, and Scott Crow (Crow) in his individual capacity (collectively "Defendants"), respectfully request this Court grant summary judgment in their favor pursuant to Fed. R. Civ. P. 56(a) as Plaintiffs have failed to exhaust their administrative remedies on their claims. In support of this Motion, Defendants' state as follows:

---

[1] Steve Harpe is the current Department of Corrections Director and is therefore automatically substituted in his official capacity as a party pursuant to Fed. R. Civ. P. 25(d).

## BRIEF IN SUPPORT

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). One of the fundamental functions of the summary judgment rule is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment may be granted when the moving party demonstrates there is no evidence to support the claims of the nonmoving party or that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(C); *Celotex Corp.*, 477 U.S. at 325. An issue is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## STATEMENT OF THE CASE

Plaintiffs are various inmates in the custody of ODOC who were at one point housed at the Great Plains Correctional Center (GPCC). Plaintiffs each claim while at GPCC, they suffered unlawful treatment at the hand of unnamed ODOC employees. Plaintiffs now bring this suit against ODOC, Defendant Harpe, the current Director of ODOC, in his official capacity, and Scott Crow, the former Director of ODOC, in his individual capacity. Plaintiffs also name various unnamed ODOC employees.

Specifically, Plaintiffs claim a violation of Section 1981, and a violation of the 8th and 14th Amendments through Section 1983 (Count I) against all Defendants, and "Supervisory Liability" against Supervisory Officials (Count II). *See* [Doc. 1-2]. Plaintiffs are seeking monetary damages from Defendants in their individual capacities. *Id*. at p. 14. Plaintiffs also seek declaratory and injunctive relief against Defendant Harpe in his official capacity, requesting this Court affirm a breach of constitutional rights. *Id*. at p. 15.

Plaintiffs' claims stem from alleged events occurring in August 2023. [Doc. 1-2, p. 2]. Plaintiff Saldivar claims he was confined to a shower cell for three days and four nights. *Id*. Plaintiff Saldivar claims the shower stalls were "marred by unsanitary conditions, including feces on the floor." [Doc. 1-2, p. 5]. Plaintiff Wolfe claims he was "locked in the showers four times." *Id*. at p. 7. Plaintiff Wolfe claims he was pepper sprayed prior to being placed in the shower stall. *Id*. Plaintiff Hernandez claims he was locked in the shower three times and pepper sprayed. *Id*. Plaintiff Hicks claims he was locked in a shower stall for 36 hours in mid-August. *Id*. Plaintiff Smith claims he was confined in a 2' by 2' space for 42 hours. *Id*. Plaintiff Pruitt claims he was placed in the SHU and shower for an extended period of time and was also pepper sprayed. *Id*. Plaintiff Johnson claims he was locked in a shower stall in mid-August 2023 and not provided basic necessities. *Id*. at p. 8.

None of these allegations were grieved to ODOC as required. In fact, no Plaintiff exhausted their administrative remedies regarding these allegations. *See* [Docs. 10-2; 10-3; 10-4; 10-5; 10-6; 10-7; 10-8; 10-13].

This Court has requested an Investigative Report solely addressing exhaustion, which was filed on July 11, 2024. *See* [Docs. 9, 10].  That Investigative Report shows that Plaintiffs have failed to exhaust their administrative remedies and therefore summary judgment is appropriate.

## STATEMENT OF MATERIAL FACTS

1. Plaintiffs are inmates within the custody of ODOC at the time of the alleged incidents. [Doc. 1-2, p. 3-4].

2. Plaintiffs allege the incidents in question happened in August 2023.  [Doc. 1-2, p. 2].

3. Plaintiffs filed this instant suit under 42 U.S.C. §1983 and §1981. [Doc. 1-2, p. 10-14].

4. Individual Defendants are employees of ODOC. [Doc. 1-2, p. 1].

5. Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

6. To exhaust available administrative remedies, an inmate in ODOC custody must follow the ODOC Grievance Process policy, OP-090124, when grieving complaints. An inmate has only exhausted all available administrative remedies upon receiving a final decision from ODOC's Administrative Review Authority ("ARA") or Medical Services Administrative office ("MSA"). [Doc. 10-1].

7. Plaintiff Saldivar has not exhausted his administrative remedies regarding the issues in the Complaint. *See* [Doc. 10-2, p. 2; 10-13].

8. Plaintiff Pruitt has not exhausted his administrative remedies regarding the issues in the Complaint. *See* [Doc. 10-3, p. 2; 10-13].

9. Plaintiff Hicks has not exhausted his administrative remedies regarding the issues in the Complaint. *See* [Doc. 10-4, p. 2; 10-13].

10. Plaintiff Johnson has not exhausted his administrative remedies regarding the issues in the Complaint. *See* [Doc. 10-5, p. 2; 10-13].

11. Plaintiff Hernandez has not exhausted his administrative remedies regarding the issues in the Complaint. *See* [Doc. 10-6, p. 2; 10-13].

12. Plaintiff Smith has not exhausted his administrative remedies regarding the issues in the Complaint. *See* [Doc. 10-7, p. 2; 10-13].

13. Plaintiff Wolfe has not exhausted his administrative remedies regarding the issues in the Complaint. *See* [Doc. 10-8, p. 2; 10-13].

14. Plaintiff Saldivar is currently housed at Lawton Correctional Facility[2]. *See* Exhibit 1, ODOC offender page.

---

[2] *See Offender Lookup information* for Daniel E. Saldivar, ODOC #738279, available at https://okoffender.doc.ok.gov/. Courts may take judicial notice of facts which are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir.2006). The inmate information and the policies of ODOC are public records, available through the ODOC website. The ODOC website is a source whose accuracy cannot be reasonably questioned.

15. Plaintiff Wolfe is currently housed at Dick Conner Correctional Center[3].  *See* Exhibit 2, ODOC offender page.

16. Plaintiff Pruitt is currently housed at Dick Conner Correctional Center[4].  *See* Exhibit 3, ODOC offender page.

17. Plaintiff Johnson is currently housed at Lawton Correctional Center[5].  *See* Exhibit 4, ODOC offender page.

**ARGUMENT AND AUTHORITY**

**PROPOSITION I: EVIDENCE ESTABLISHES PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AVAILABLE.**

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, a prisoner cannot bring suit concerning prison

---

[3] *See Offender Lookup information* for Michael L. Wolfe, ODOC #671170, available at https://okoffender.doc.ok.gov/. Courts may take judicial notice of facts which are a matter of public record. *Tal*, 453 F.3d at 1264 n.24. The inmate information and the policies of ODOC are public records, available through the ODOC website. The ODOC website is a source whose accuracy cannot be reasonably questioned.

[4] *See Offender Lookup information* for Larry Pruitt, Jr., ODOC #258832, available at https://okoffender.doc.ok.gov/. Courts may take judicial notice of facts which are a matter of public record. *Tal*, 453 F.3d at 1264 n.24. The inmate information and the policies of ODOC are public records, available through the ODOC website. The ODOC website is a source whose accuracy cannot be reasonably questioned.

[5] *See Offender Lookup information* for Robert D. Johnson, ODOC #760271, available at https://okoffender.doc.ok.gov/. Courts may take judicial notice of facts which are a matter of public record. *Tal*, 453 F.3d at 1264 n.24. The inmate information and the policies of ODOC are public records, available through the ODOC website. The ODOC website is a source whose accuracy cannot be reasonably questioned.

6

conditions without first exhausting all available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 733-34 (2001); 42 U.S.C. § 1997e(a).

The Tenth Circuit has explained that the purpose of the exhaustion requirement is to:

> reduce the quantity and improve the quality of prisoner suits by (1) allowing prison officials an opportunity to satisfy the inmate's complaint—thus obviating the need for litigation; (2) filtering out some frivolous claims; and (3) creating an administrative record that facilitates review of cases that are ultimately brought to court.

*Whitington v. Oritz,* 472 F.3d 804, 807 (10th Cir. 2007) (citing *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). Exhaustion is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. *Woodford v. Ngo*, 548 U.S. 81 (2006); *Booth*, 532 U.S. at 741. A prisoner cannot sue under federal law concerning prison conditions without first properly exhausting all available administrative remedies. *Booth*, 532 U.S. at 733-34; *Woodford,* 548 U.S. at 90, 93-103. Thus, the PLRA, which places restrictions on a prisoner's ability to file an action based on conditions of confinement, requires prisoners to exhaust prison grievance procedures before filing suit. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Exhaustion under the PLRA "is mandatory." *Woodford*, 548 U.S. at 85.

The United States Supreme Court has made clear, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Therefore, to properly exhaust, a prisoner must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively

without imposing some orderly structure on the court of its proceedings." *Woodford,* 548 U.S. at 90-91. "Simply presenting a defective or non-complying grievance...does not constitute exhaustion of remedies." *Brewer v. Mullin*, 130 F.App'x 264, 265 (10th Cir. 2005) (not selected for publication). The prisoner must timely exhaust each and every step of a prison system's grievance procedure in full compliance with the procedure's requirements; partial compliance is not sufficient. *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002).

The mandatory exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. A plaintiff's disagreement as to the appropriateness of a particular procedure does not excuse the plaintiff's obligation to comply with the available process. *See Thomas v. Parker,* 609 F.3d 1114, 1119 (10th Cir. 2010). Prisoners must exhaust the remedies, even if doing so seems futile. *Jernigan,* 304 F.3d at 1032.

Courts will only excuse failure to exhaust if prison officials impede the prisoner's attempts. *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010). Once a defendant demonstrates that the plaintiff did not exhaust his administrative remedies, "the onus falls on the plaintiff to show that remedies were unavailable to him." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (citation omitted).

**ODOC'S POLICY ON EXHAUSTION**

ODOC Policy OP-090124, "Inmate/Offender Grievance Process," governs DOC offender complaints regarding incidences of prison life. [Doc. 10-1]. Further, it provides

8

the multi-step exhaustion process an offender must satisfy before filing suit. *Id.* According to OP-090124 (V), an offender must first attempt to informally resolve his complaint by talking with the appropriate staff member. [Doc. 10-1, p. 8-11]. If unsuccessful, then the offender must submit a Request to Staff ("RTS") to the appropriate staff member within seven (7) days of the incident. *Id.* at p. 9. ***The initial informal step may be bypassed only if the complaint involves a sensitive topic or an emergency***. *Id*. (emphasis added). If the offender's complaint remains unresolved, the offender may begin the formal grievance procedure by submitting a Grievance to the Reviewing Authority. *Id.* at p. 11. This must be done within fifteen (15) days of the incident or from the date of the response to the RTS, whichever is later. *Id.* If the complaint concerns a medical issue, the offender must submit the Grievance to the facility Correctional Health Services Administrator ("CHSA"). *Id.* at p. 12. Grievances that are of an emergency or sensitive nature can be submitted directly to the Reviewing Authority without informal resolution. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm, or other irreparable harm. *Id.* at p. 18. If a grievance response fails to resolve the issue, the inmate should appeal to the Administrative Review Authority ("ARA"); however, if the complaint concerns a medical issue, to the ODOCs Medical Administrative Review Authority. *Id.* at p. 14. The grievance appeal must be filed within fifteen days of the date of the grievance response. *Id.* at p. 15.

When a RTS or Grievance is not answered, ODOC's policy provides a remedy. Specifically, if there has been no response to a RTS within 30 days of submission but no later than 60 days, an inmate may file a Grievance regarding the lack of response. *Id.* at p. 10-11. Likewise, when a Grievance is submitted and there has been no response within 30

days but less than 60 days, an inmate may file a Grievance to the ARA on the issue of a lack of response. *Id.* at p. 13.

The Complaint is largely bare on dates of any alleged occurrences, but generally seem to indicate August 2023 is the time frame in question. [Doc. 1-2, p. 2]. Below is a summary of RTS's filed by some of the Plaintiffs. Other Plaintiffs completely failed to file any RTS or grievance whatsoever. Most of the RTS's that were filed are not relevant to this lawsuit and were potentially filed out of time for any alleged incidents occurring in August 2023. No formal grievances were filed by any Plaintiff, a necessary step to properly exhaust. Plaintiffs knew and understood the exhaustion process, were able to access that process, but failed to do so regarding the events alleged in their Complaint. The PLRA's exhaustion requirement is mandatory, and Plaintiffs failed to comply with this requirement. Though some Plaintiffs attempted to follow ODOC procedures regarding the grievance process regarding other matters that are not related to this lawsuit, they did not properly and fully exhaust in compliance with the PLRA as shown below. Because there is no disputed material fact regarding the affirmative defense of failure to exhaust, Plaintiffs' claims should be dismissed. *See Stone v. Albert*, No. 06-2336, 2007 WL 4230702, at *3 (10th Cir. Dec. 3. 2007) (unpublished) (noting that uncontradicted affidavit of prison records custodian was sufficient to establish that prisoner failed to exhaust administrative remedies).

**Requests to Staff**

According to ODOC's policy, the offender must submit a RTS to the appropriate staff member within seven (7) days of the incident at issue. [Doc. 10-1, p. 9]. If the

offender's complaint remains unsolved, the offender may begin the formal grievance procedure by submitting a grievance to the Reviewing Authority. *Id*. at p. 11. RTS's were only filed by Plaintiffs Pruitt, Smith, Hicks and Wolf as outlined below. Plaintiffs Saldivar, Hernandez, and Johnson did not submit any RTS or grievance.

**Grievances**

If a grievance response fails to resolve the issue, the inmate should appeal to the ARA. Alternatively, if the complaint concerns a medical issue, the inmate should appeal to the ODOCs Medical Administrative Review Authority. *Id.* at p. 14. The grievance appeal must be filed within fifteen days of the date of the grievance response. *Id.* at p. 15. However, in the instant action, Plaintiffs failed to file any grievances during the relevant time periods. [Doc. 10-13]. Nor has the ARA received any grievances, grievance appeals, or any correspondence from any Plaintiff regarding any constitutional violations or conditions of confinement issues while incarcerated at Great Plains Correctional Center. [Doc. 10-2; 10-3; 10-4; 10-5; 10-6; 10-7; 10-8].

**Emergency Grievances**

The initial informal step of filing an RTS may be bypassed only if the complaint involves a sensitive topic or an emergency. [Doc. 10-1, p. 9]. Grievances that are of an emergency or sensitive nature can be submitted directly to the Reviewing Authority without informal resolution. *Id*. at p. 18. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm, or other irreparable harm. *Id.* at p. 18.

No Plaintiff filed any Emergency Grievances. Plaintiffs Saldivar, Johnson, and Hernandez have not filed any RTS's or Grievances, including emergency grievances. *See*

[Docs. 10-2; 10-5; 10-6; 10-13].   Furthermore, Plaintiffs Saldivar, Wolfe, Pruitt, and Johnson are no longer housed at Great Plains Correctional Center.  *See* Exhibits 1-4.

### PLAINTIFF PRUITT

**RTS Submitted On 8.19.23**

On August 19, 2023, Plaintiff Pruitt filed a RTS requesting to be served a write up. [Doc. 10-9, p. 4].  On August 30, 2023, the RTS was answered stating that Plaintiff Pruitt refused to house.  *Id*.  Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id*. However, no further action was taken by Plaintiff Pruitt to fully exhaust this issue.  *See* [Doc. 10-3; 10-13].

**RTS's Submitted On 8.24.23**

On August 24, 2023, Plaintiff Pruitt filed an RTS requesting "the address to any [and] every civil and human rights organizations [and] the names of any [and] every person we inmates could contact to get us some help." [Doc. 10-9, p. 2]. This RTS was answered on August 30, 2023, informing Plaintiff Pruitt that this information was available to him at the law library. *Id*.  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id*. However,

no further action was taken by Plaintiff Pruitt to fully exhaust this issue.  *See* [Doc. 10-3; 10-13].

Also on August 24, 2023, Plaintiff Pruitt filed a RTS requesting to know why he had not yet been transferred and why his transfer packet had not been sent.  [Doc. 10-9, p. 3].  This RTS was answered on August 29, 2023, stating that the employee had been busy with adjustment reviews, prereleases, transfer packets, parole, and bed moves.  *Id*.  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy, to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved.  *See* [Doc. 10-3; 10-13].  Further, since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center.  *See* Exhibit 3.

**RTS Submitted On 8.27.23**

On August 27, 2023, Plaintiff Pruitt filed a RTS requesting an inventory of all of his property.  [Doc. 10-9, p. 5].  This RTS was answered on August 31, 2023, listing all of his property.  *Id*.  Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later.

13

*Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue. *See* [Doc. 10-3; 10-13].

**RTS's Submitted On 8.31.23**

On August 31, 2023, Plaintiff Pruitt filed a RTS requesting his transfer packet be turned in or explain why it has not been turned in. [Doc. 10-9, p. 7]. This RTS was answered on September 22, 2023, stating that the transfer request has been sent. *Id.* If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved. *See* [Doc. 10-3; 10-13]. Further, since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center. *See* Exhibit 3.

Also on August 31, 2024, Plaintiff Pruitt filed a RTS requesting that his transfer papers be turned in or explain why it has not been turned in. [Doc. 10-9, p. 9]. This RTS was answered on September 13, 2023, stating an employee was working on the papers. *Id.* If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed

additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved.  *See* [Doc. 10-3; 10-13].  Further, since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center.  *See* Exhibit 3

**RTS Submitted On 9.7.23**

On September 7, 2023, Plaintiff Pruitt filed a RTS requesting his transfer packet be turned in or explain why it has not been turned in.  [Doc. 10-9, p. 8].  This RTS was answered on September 13, 2023, stating that an employee was working on the packet.  *Id*. If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved.  *See* [Doc. 10-3; 10-13].  Further, since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center.  *See* Exhibit 3. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident.  [Doc. 10-1, p. 9].

**RTS's Submitted On 9.10.23.**

On September 10, 2023, Plaintiff Pruitt filed a RTS requesting his transfer packet be turned in.  [Doc. 10-9, p. 10].  This RTS was answered on September 19, 2023,

explaining that the transfer packet had been turned in and that it was in process. *Id*. If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id*. Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved. *See* [Doc. 10-3; 10-13]. Since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center. *See* Exhibit 3. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

Also on September 10, 2023, Plaintiff Pruitt filed a RTS requesting his transfer packet be turned in. [Doc. 10-9, p. 11]. This RTS was answered on September 19, 2023, stating that the transfer packet had been sent. *Id*. If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id*. Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved. *See* [Doc. 10-3; 10-13]. Since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick

16

Conner Correctional Center.  *See* Exhibit 3.  Moreover, this RTS would likely be out of time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident.  [Doc. 10-1, p. 9].

**RTS Submitted On 9.12.23**

On September 12, 2023, Plaintiff Pruitt filed a RTS requesting a transfer.  [Doc. 19-9, p. 12].  This RTS was answered on September 19, 2023, stating that the transfer packet had been sent.  *Id.*  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved.  *See* [Doc. 10-3; 10-13].  Since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center. *See* Exhibit 3.  Moreover, this RTS would likely be out of time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident.  [Doc. 10-1, p. 9].

**RTS's Submitted On 9.13.23**

On September 13, 2023, Plaintiff Pruitt filed a RTS accusing employees of lying about transfer packets.  [Doc. 10-9, p. 13].  This RTS was answered on September 19, 2023, stating that the transfer packet was at population.  *Id.*  Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.  If

Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved. *See* [Doc. 10-3; 10-13]. Since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center. *See* Exhibit 3. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

Also on September 13, 2023, Plaintiff Pruitt filed a RTS requesting an inventory of his property. [Doc. 10-9, p. 14]. This RTS was answered on September 19, 2023, stating that this request needed to be sent to property. *Id.* Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved. *See* [Doc. 10-3; 10-13]. Moreover, this RTS would likely be out of

18

time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident.  [Doc. 10-1, p. 9].

**RTS's Submitted On 9.18.23**

On September 18, 2023, Plaintiff Pruitt filed a RTS accusing employees of lying about transfer packets.  [Doc. 10-9, p. 15].  This RTS was answered on September 28, 2023, stating that the transfer request could not be completed without the misconduct.  *Id*. Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Pruitt to fully exhaust this issue. *See* [Doc. 10-3; 10-13].  Since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center.  *See* Exhibit 3.  Moreover, this RTS would likely be out of time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident.  [Doc. 10-1, p. 9].

Also on September 18, 2023, Plaintiff Pruitt filed a RTS demanding his allegedly lost/stolen property be returned.  [Doc. 10-9, p. 16].  This RTS was answered on September 18, 2023, stating that a detailed description of how property was lost/stolen was needed. *Id*.  Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the

Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved. *See* [Doc. 10-3; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 10.4.23**

On October 4, 2023, Plaintiff Pruitt filed a RTS stating only the person that stole his items could provide that detailed description. [Doc. 10-9, p. 17]. This RTS was answered on October 16, 2023, stating that his concern was noted. *Id*. If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Pruitt to fully exhaust this issue. *See* [Doc. 10-3; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 10.25.23**

On October 25, 2023, Plaintiff Pruitt filed a RTS requesting three showers a week and to allow him to shave every time he takes a shower. [Doc. 10-9, p. 18]. This RTS was

answered on November 2, 2023, stating that he was getting showers every 72 hours.  *Id*. Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Pruitt to fully exhaust this issue.  *See* [Doc. 10-3; 10-13].  Moreover, this RTS would likely be out of time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident.  [Doc. 10-1, p. 9].

**RTS Submitted On 11.1.23**

On November 1, 2023, Plaintiff Pruitt filed a RTS requesting a 120-day adjustment review.  [Doc. 10-9, p. 19].  This RTS was answered on November 15, 2023, stating that refusing housing equates to ineligibility for promotion due to poor behavior.  *Id*.  Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Pruitt to fully exhaust this issue.  *See* [Doc. 10-3; 10-13].  Moreover, this RTS would likely be out of time based on allegations of events

being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident.  [Doc. 10-1, p. 9].

**RTS Submitted On 11.8.23**

On November 8, 2023, Plaintiff Pruitt filed a RTS requesting his level 2.  [Doc. 10-9, p. 20].  This RTS was answered on November 15, 2023, stating that Pruitt was continuing to refuse housing which is continued poor behavior.  *Id*.  Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id*. Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved.  *See* [Doc. 10-3; 10-13].  Moreover, this RTS would likely be out of time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident.  [Doc. 10-1, p. 9].

**RTS Submitted On 11.13.23**

On November 13, 2023, Plaintiff Pruitt filed a RTS requesting level 2.  [Doc. 10-9, p. 21].  This RTS was answered on November 16, 2023, stating Pruitt refused housing and continues to do so, warranting level 1 for continued poor behavior.  *Id*.  Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.  If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun

the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved. *See* [Doc. 10-3; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 11.12.23**

On November 12, 2023, Plaintiff Pruitt filed a RTS requesting level 2 and transfer packet. [Doc. 10-9, p. 22]. This RTS was answered on November 21, 2023, stating that Pruitt continued to refuse housing which constituted poor behavior, and Pruitt will remain at level 1 until this changes. *Id.* If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Pruitt has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Pruitt determined his complaint remained unresolved. *See* [Doc. 10-3; 10-13]. Since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center. *See* Exhibit 3. Moreover, this RTS would likely be out of time based

on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 11.20.23**

On November 20, 2023, Plaintiff Pruitt filed a RTS requesting level 2. [Doc. 10-9, p. 23]. This RTS was answered on December 1, 2023, stating that if Pruitt continued to refuse housing, he would remain level 1. *Id*. Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Pruitt to fully exhaust this issue. *See* [Doc. 10-3; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 11.22.23**

On November 22, 2023, Plaintiff Pruitt filed a RTS requesting a copy of his transfer packet. [Doc. 10-9, p. 24]. This RTS was answered on December 1, 2023, stating that Pruitt had been transferred to JCCC and was not required to be provided a copy of his transfer packet. *Id*. If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However,

no further action was taken by Plaintiff Pruitt to fully exhaust this issue. *See* [Doc. 10-3; 10-13]. Since this RTS was submitted, Plaintiff Pruitt has been transferred to Dick Conner Correctional Center. *See* Exhibit 3. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 11.27.23**

On November 27, 2023, Plaintiff Pruitt filed a RTS requesting the Warden come speak to him at SMU once a week. [Doc. 10-9, p. 25]. This RTS was answered on January 10, 2024, stating that the Warden goes to SMU once, if not twice a week. *Id*. Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Pruitt felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Pruitt to fully exhaust this issue. *See* [Doc. 10-3; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**PLAINTIFF SMITH**

**RTS Submitted On 8.27.23**

On August 27, 2023, Plaintiff Smith filed an RTS requesting help in getting items he claimed were stolen. [Doc. 10-10, p. 2]. The RTS was answered on August 30, 2023,

informing Plaintiff Smith that DOC is not responsible for stolen property. *Id*.   Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.  If Plaintiff Smith felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Smith to fully exhaust this issue.  *See* [Doc. 10-7; 10-13].

**RTS Submitted On 9.28.23**

On September 28, 2023, Plaintiff Smith filed a RTS requesting to be cleared to work in the kitchen.  [Doc. 10-10, p. 3].  This RTS was answered on October 7, 2023, stating that Smith was approved for work in the kitchen.  *Id*.  Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered.   If Plaintiff Smith felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Smith to fully exhaust this issue.  *See* [Doc. 10-7; 10-13].  Moreover, this RTS would likely be out of time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 1.24.24**

On January 24, 2024, Plaintiff Smith filed a RTS requesting to be approved for Passover meals. [Doc. 10-10, p. 4]. This RTS was answered on February 12, 2024, stating that Passover sign up had passed but the change was sent to records. *Id*. Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Smith felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Smith has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Smith determined his complaint remained unresolved. *See* [Doc. 10-7; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 5.5.24**

On May 5, 2024, Plaintiff Smith filed a RTS requesting a status update on his religious changes. [Doc. 10-10, p. 5]. This RTS was answered on May 30, 2024, stating that the request was sent to records for change of religion. *Id*. Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Smith felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p.

11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Smith has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Smith determined his complaint remained unresolved. *See* [Doc. 10-7; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 5.20.24**

On May 20, 2024, Plaintiff Smith filed a RTS requesting his religion be updated with records. [Doc. 10-10, p. 6]. This RTS was answered on May 30, 2024, stating that the change of religion was sent to records. *Id.* Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Smith felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* Although Plaintiff Smith has filed additional RTS's on this issue (see below), he did not file a formal grievance, as required by ODOC policy to fully exhaust the issue when Plaintiff Smith determined his complaint remained unresolved. *See* [Doc. 10-7; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 5.31.24**

On May 31, 2024, Plaintiff Smith filed a RTS requesting forms to be updated to show products are marked as kosher. [Doc. 10-10, p. 7]. This RTS was answered stating the issue had been rectified. *Id.* Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Smith felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Smith to fully exhaust this issue. *See* [Doc. 10-7; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 6.20.24**

On June 20, 2024, Plaintiff Smith filed a RTS requesting an update on his religious status. [Doc. 10-10, p. 8]. This RTS contains no allegations such as those in Plaintiffs' Complaint. This RTS was returned unanswered. When a RTS or Grievance is not answered, ODOC's policy provides a remedy. Specifically, if there has been no response to a RTS within 30 days of submission but no later than 60 days, an inmate may file a Grievance regarding the lack of response. *Id.* at p. 10-11. If Plaintiff Smith felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the

RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Smith to fully exhaust this issue. *See* [Doc. 10-7; 10-13].   Moreover, this RTS would likely be out of time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident.  [Doc. 10-1, p. 9].

**RTS Submitted On 7.8.24**

On July 8, 2024, Plaintiff Smith filed a RTS requesting his eyeglasses prescription so his mother could order him glasses.  [Doc. 10-10, p. 9].  This RTS contains no allegations such as those in Plaintiffs' Complaint.  This RTS was returned unanswered.  When a RTS or Grievance is not answered, ODOC's policy provides a remedy. Specifically, if there has been no response to a RTS within 30 days of submission but no later than 60 days, an inmate may file a Grievance regarding the lack of response. *Id.* at p. 10-11. If Plaintiff Smith felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Smith to fully exhaust this issue.  *See* [Doc. 10-7; 10-13].    Moreover, this RTS would likely be out of time based on allegations of events being August of 2023.  RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**PLAINTIFF HICKS**

**RTS Submitted On 9.25.23**

On September 25, 2023, Plaintiff Hicks submitted an RTS to medical related to some testing. [Doc. 10-11, p. 2]. This was answered on October 7, 2023, stating Plaintiff was scheduled for tests on October 3, 2023. *Id*. Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Hicks felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Hicks to fully exhaust this issue. *See* [Doc. 10-4; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 11.7.23**

On November 7, 2023, Plaintiff Hicks filed a RTS stating he was in an argument with Ms. Allen involving an assault and he wanted his property back. [Doc. 10-11, p. 3]. This RTS was answered on November 21, 2023, stating that ODOC is not responsible for unsecured property and there is no evidence to support a claim of Ms. Allen being involved in an assault. *Id*. If Plaintiff Hicks felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of

the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Hicks to fully exhaust this issue. *See* [Doc. 10-4; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**RTS Submitted On 1.5.24**

On January 5, 2024, Plaintiff Hicks filed a RTS stating he needed his property returned. [Doc. 10-11, p. 4]. This RTS was answered on January 17, 2024, stating the request needed to be sent to Hick's unit manager. *Id.* Not only does this RTS contain no allegations such as those in Plaintiffs' Complaint, but it was also fully answered. If Plaintiff Hicks felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Hicks to fully exhaust this issue. *See* [Doc. 10-4; 10-13]. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

**PLAINTIFF WOLFE**

**RTS Submitted On 2.26.24**

On February 26, 2024, Plaintiff Wolfe submitted an RTS requesting to call his attorney. [Doc. 10-12, p. 2]. This RTS was answered on March 12, 2024, and his request

32

to call his attorney was provided to Plaintiff Wolfe. *Id*. If Plaintiff Wolfe felt his complaint remained unresolved, he could have begun the formal grievance procedure by submitting a Grievance to the Reviewing Authority. [Doc. 10-1, p. 11]. This would have needed to be done within fifteen days of the incident or from the date of the response to the RTS, whichever is later. *Id.* However, no further action was taken by Plaintiff Wolfe to fully exhaust this issue. *See* [Doc. 10-8; 10-13]. Since this RTS was submitted, Plaintiff Wolfe has been transferred to Dick Conner Correctional Center. *See* Exhibit 2. Moreover, this RTS would likely be out of time based on allegations of events being August of 2023. RTS's must be submitted to the appropriate staff member within seven (7) days of the incident. [Doc. 10-1, p. 9].

## **CONCLUSION**

The evidence shows that Plaintiffs have failed to exhaust their remedies and therefore summary judgment is appropriate. For these reasons described above, Defendants request this Court grant its summary judgment on all claims and dismiss Plaintiffs' action.

Respectfully submitted,


/s/ Lauren Ray
**LAUREN RAY, OBA# 22694**
**LEXIE P. NORWOOD, OBA#31414**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
T:  (405) 521-3921  | F:  (405) 521-4518
Email: lauren.ray@oag.ok.gov
Email: lexie.norwood@oag.ok.gov
*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day August 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further that a true and correct copy of the foregoing document was sent to the following who is an ECF registered participant:

Richard Labarthe, OBA 11393          Alexey Tarasov, OBA 32926
LABARTHE & TARASOV                   LABARTHE & TARASOV
6303 N. Portland Ave., Suite 210     330 W. Gray Street, Suite 208
Oklahoma City, OK 73112              Norman, OK 73069
Richard@labarthelaw.com              Alexey@tarasovlaw.com
*Attorney for Plaintiff*             *Attorney for Plaintiff*



/s/ Lauren J. Ray
Lauren Ray