IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL SALDIVAR et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-442-PRW |
| | ) |
| OKLAHOMA DEPARTMENT OF CORRECTIONS et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Daniel Saldivar, Michael Wolfe, Zurrell Hernandez, Christopher Hicks, Ronnie Smith II, Larry Pruitt, and Robert D. Johnson are convicted state prisoners who have filed a Complaint under 42 U.S.C. §§ 1981 and 1983, alleging inhumane conditions of confinement in violation of the Eighth Amendment while incarcerated at the Great Plains Correctional Center (GPCC) in Hinton, Oklahoma. (ECF No. 1-2). The action was originally filed in Oklahoma County District Court, but it was removed to this Court by the only individually named Defendant, the Director of the Oklahoma Department of Corrections (ODOC), Steven Harpe. (ECF No. 1). United States District Judge Patrick R. Wyrick has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C).

Currently before the Court is a Motion for Summary Judgment filed by the Oklahoma Department of Corrections; Steven Harpe, in his official capacity; and Scott Crow, in his individual capacity (Defendants). (ECF No. 11). The Motion argues that summary judgment is appropriate because Plaintiffs have failed to exhaust their

administrative remedies with the respect to the claims raised in the Complaint. Plaintiffs have responded and Defendants have replied (ECF Nos. 15 & 17). The Court should grant the Motion for Summary Judgment, but only against Plaintiff Johnson.

## I.     STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party. *Pepsi–Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.,* 431 F.3d 1241, 1255 (10th Cir. 2005). While the Court construes a pro se litigant's pleadings liberally, such a litigant nevertheless is held to the same rules of procedure as are binding on other litigants. *See Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor, i.e. to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.,* 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record; or

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish *all* of the elements of the defense. *See Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant ... must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense, absent which summary judgment should be granted in favor of the defendant. *Id.*

## II. SUMMARY JUDGMENT—NON-EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants argue that they are entitled to summary judgment due to Plaintiffs' failure to exhaust their administrative remedies on the claims that they were subjected to inhumane conditions of confinement while housed at GPCC. (ECF No. 11). The Court should grant Defendants' Motion, but only as to Plaintiff Johnson.

### A. The Exhaustion Requirement

The Prison Litigation Reform Act of 1995 (PLRA) requires a prisoner to exhaust all available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to

3

prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Inmates such as Plaintiffs, successfully exhaust their administrative remedies by completing the administrative review process established by the facility grievance policy. *Id.* at 218. Exhaustion must occur prior to the prisoner bringing a lawsuit on his claims. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *See id.; see also Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (noting that "substantial compliance [with the exhaustion process] is insufficient."

However, an administrative remedy is not "available" under the PLRA if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy." *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010); *see also Ross v. Blake*, 578 U.S. 632 (2016). In *Ross*, the United States Supreme Court outlined three situations in which failure to exhaust is excusable because an administrative remedy is not available to the inmate as required by the PLRA. For one, a remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. Exhaustion is not required when "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures.... [S]uch interference with an inmate's pursuit of

4

relief renders the administrative process unavailable." *Id.* Based on this principle, district courts are obligated "to ensure that any defects in exhaustion [are] not procured from the action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir. 2007).

Indeed, in *Tuckel v. Grover*, 660 F.3d 1249 (10th Cir. 2011), the Tenth Circuit Court of Appeals gave specific guidance regarding a plaintiff's burden of proof on this issue, stating:

> [T]o defeat a failure-to-exhaust defense . . . [w]e hold that an inmate must make two showings: (1) that the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative process that the inmate failed to exhaust.
>
> The first showing is subjective; the inmate must show that he was actually deterred. The second is an objective one, requiring the district court to consider the context of the alleged threat or intimidation. . . . Only threats that are sufficiently serious and retaliatory acts that are severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes.

*Tuckel v. Grover*, 660 F.3d at 1254.

### B. The Relevant Grievance Process

At all times relevant to Plaintiffs' claims, they were incarcerated at GPCC, a prison owned and operated by the Oklahoma Department of Corrections (DOC).[1] In their investigative report, Defendants have attached the relevant grievance procedure—DOC Inmate/Offender Grievance Process OP-090124. *See* ECF No. 10-1.

---

[1] *See* https://oklahoma.gov/doc/facilities (last visited Sept. 24, 2024).

Pursuant to OP-090124, a prisoner must initially seek to resolve any complaint by informally raising the matter with an appropriate staff member. *Id.* at 8. If the matter is not resolved informally, the prisoner must submit a Request to Staff (RTS) within seven calendar days of the incident, raising only one issue therein. *Id.* at 8-10. If the RTS does not successfully resolve the issue, the prisoner must submit a formal grievance form, with a copy of the RTS attached, to the appropriate facility reviewing authority within 15 calendar days from the date of the response to the RTS. *Id.* at 11-13. If the reviewing authority denies the grievance at the prison level, a prisoner must appeal the decision to the Administrative Review Authority (ARA) within 15 days of receipt of the same to complete exhaustion of his administrative remedies. *Id.* at 15-18.

### C. The Parties' Arguments Regarding Exhaustion of Administrative Remedies

Defendants have filed a Motion for Summary Judgment, arguing that none of the Plaintiffs have exhausted their administrative remedies on the issues alleging unconstitutional conditions of confinement as set forth in the Complaint. (ECF No. 11). In support of this argument, Defendants have submitted affidavits from Mark Knutson, Manager of the ARA at the DOC, stating that the ARA has not received a grievance, grievance appeal, or any correspondence from any of the named Plaintiffs regarding any constitutional violations or issues regarding conditions of confinement at GPCC. *See* ECF Nos. 10-2, 10-3, 10-4, 10-5, 10-6, 10-7, 10-8.

In response to Defendants' assertion regarding Plaintiffs' non-exhaustion of administrative remedies, Plaintiffs argue that the administrative procedure was effectively "unavailable" to them "due to systemic intimidation, non-responsiveness, and obstruction

by ODOC staff and administrators." (ECF No. 15:9). In support, Plaintiffs each submit an affidavit outlining their attempts to exercise their administrative remedies and how GPCC staff allegedly prevented them from doing so. (ECF Nos. 15-1-15-7).

In a reply to Plaintiff's response, Defendants argue that Plaintiffs "rely almost exclusively on their self-serving declarations to support their claims and try to dispute Defendant's material facts." (ECF No. 17:3). Defendants argue that Plaintiffs' affidavits are general, vague, conclusory, lack corroborating evidence, and are, therefore, "insufficient to create a genuine issue of material fact precluding summary judgment." (ECF No. 17:4). The Court should agree, but only as to Plaintiff Johnson.

As stated, the necessary showing to defeat a defense of non-exhaustion of administrative remedies involves: (1) a subjective showing that "the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the prison administrative process" and (2) an objective showing that "the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative process that the inmate failed to exhaust." *See supra*, *Tuckel*. An examination of the evidence submitted by Plaintiffs is necessary to determine if the requisite showing under *Tuckel* has been met by each inmate in this case.

First, Plaintiff Wolfe states:

- He was pepper-sprayed and confined in a shower stall at GPCC for extended periods;

- When he attempted to complain about the "showers incident," a GPCC officer warned him that him speaking out about the shower incident would

- "determine how things go" and if he spoke about it, his situation "may be dangerous;"

- After speaking to an internal investigator, he was placed in an 8-man cell with inmates who were members of "the Neighborhood Crips gang;" and

- He has been "effectively prevented from utilizing the administrative remedies that should be available to me under the Prison Litigation Reform Act (PLRA) due to the threats, intimidation, and systemic failures within the correctional system."

(ECF No. 15-1). As to Plaintiff Wolfe, the Court should conclude that he has satisfied his burden under *Tuckel*. Mr. Wolfe has alleged that after speaking to an investigator about the incident, he was placed in a cell with dangerous gang members, after being warned that if he spoke about it, his situation "may be dangerous." The Court should find that Plaintiff Wolfe's statement that he was deterred from pursuing the issue further satisfies the subjective component and placement in a cell with dangerous gang members after he was effectively warned not to satisfies the objective component under *Tuckel*.

Next, Plaintiff Pruitt states:

- He was forced to endure "extended confinement in a shower stall at [GPCC];"

- When he attempted to file a grievance on the shower stalls issue, GPCC correctional officer "Tandy" warned Mr. Pruitt that any attempt to grieve the issue "would result in harsh punishment, including extended solitary confinement" and implied that "what [Mr. Pruitt] told the internal investigator would determine [his] future treatment at the facility;"

- He was "not furnished a grievance form for the showers incident" and

- He was "unable to access the grievance process" due to the "severity of the threats and the environment of intimidation."

(ECF No. 15-2).

As to Plaintiff Pruitt, the Court should conclude that he has satisfied his burden under *Tuckel*. Mr. Pruitt has identified a specific threat from a specific prison official that would occur if he pursued grieving the shower stalls incident, and due to those threats he was deterred from attempting to exhaust his administrative remedies. *See May v. Segovia*, 929 F.3d 1223, 1235 (10th Cir. 2019) (noting that inmates "must produce specific facts" to satisfy the burden under *Tuckel*).

Plaintiff Johnson states:

- He was confined in a shower stall at GPCC;

- After the incident, he asked for a grievance form, but "no grievance form was available to [him];" and

- Based on correctional officers' behavior toward him in being placed in a cell where he had been bossed around by other inmates prior to the "shower stall" incident, he feared filing a grievance on the issue would result in being "returned to the showers . . . or placed in an even worse situation;" and

- Due to lack of grievance forms and "veiled threats" from GPCC officials, he was unable to utilize the grievance process.

(ECF No. 15-3). The Court should find that Defendant Johnson has not met his burden under *Tuckel*. Mr. Johnson stated that he asked for a grievance form, but "no form was available to [him.]." (ECF No. 15-3). He fails to specify who he asked or who failed to give him the form. *See Gess v. USMS*, No. 20-cv-01790-PAB-STV, 2020 WL 8838280, at *8 (D. Colo. Dec. 10, 2020) ("Plaintiff's conclusory allegation that grievance forms were not provided to him is insufficient to establish that the administrative process was unavailable to him."). Furthermore, while Plaintiff Johnson references "being bossed around by other inmates" prior to the shower stall incident, and his general "fear" of retaliation if he attempted to grieve the issue, these statements are insufficient to

9

overcome the burden as set forth in *Tuckel*. *See Roberts v. Jones*, No. 11-43-M, CIV-2012 WL 1072271, at *3 (W.D. Okla. Feb. 10, 2012) ("Mr. Roberts' alleged fear of retaliation would not excuse exhaustion"); *Woodson v. Allbaugh*, No. CIV-17-94-D, 2018 WL 3954770, at *4 (W.D. Okla. June 19, 2018) ("Plaintiff's vague reference to being intimidated . . . is not sufficient to create a genuine dispute over whether Plaintiff could have used the ODOC Grievance Process to seek relief on his complaints.").

Plaintiff Smith states:

- He was confined in a shower stall at GPPC;

- He submitted a request asking for a grievance form to formally complain about the shower incident, but never received the form;

- He filed requests to staff on other issues, but never received any responses;

- When he followed up with GPCC officers regarding prison officials' non-responsiveness to his complaints, he was told that pursuing complaints would "result in severe consequences, including possible further solitary confinement;" and

- He "was left feeling powerless to seek any remedy for the mistreatment [he] was subjected to" and was unable to pursue the administrative remedies required by the PLRA as a result of the lack of access to grievance forms and the intimidation he experienced.

(ECF No. 15-4). As to Plaintiff Smith, the Court should conclude that he has satisfied his burden under *Tuckel*. Mr. Smith states that he requested a grievance form, was given no form, followed up about the whereabouts of the form, and then was specifically threatened with solitary confinement if he continued to pursue the issue. Like inmate Pruitt, Mr. Smith has identified a specific threat—solitary confinement—if he pursued grieving the issue, which left him "feeling powerless" to grieve the issue. Additionally,

Plaintiff Smith's allegations are bolstered by an affidavit submitted by former GPCC corrections officer Jeanette Fleissner, who stated:

- She personally observed "a persistent culture of intimidation against inmates who attempted to report mistreatment or file grievances. . . fac[ing] threats and retaliation from . . . staff; and

- Grievances and complaints "were routinely discarded or ignored . . . [or] thrown in the trash.

(ECF No. 15-8).

In their response, Defendants state: "Assertions in an affidavit that are not supported in the record by corroborating evidence are insufficient to create a genuine question of material fact precluding summary judgment." (ECF No. 17:4). While Defendants correctly state the law, Ms. Fleissner's affidavit provides the type of corroborating evidence necessary to create a disputed material fact precluding summary judgment in this case. As such, the Court should conclude that Plaintiff Smith has satisfied his burden under *Tuckel*.

Plaintiff Hicks states:

- He was confined in a shower stall at GPPC;

- Approximately 10-15 times, he requested a grievance form to complain about the incident, but no grievance form was forthcoming;

- GPCC officials made "veiled threats" against him to the effect that if he attempted to grieve the shower stalls incident, he would face retaliation, including extended solitary confinement; and

- the threats were serious enough to deter him from pursuing the grievance process; and

- due to the lack of access to grievance forms and the intimidation he faced, he was unable to pursue the administrative remedies required by the PLRA.

11

(ECF No. 15-5). For the same reasons outlined as to Plaintiff Smith, the Court should likewise conclude that Plaintiff Hicks has satisfied his burden under *Tuckel*.

Plaintiff Hernandez states:

- He was confined in a shower stall at GPCC for extended periods;

- Two to three times he requested a grievance form to complain about the incident, but was never provided a form; and

- He was warned by GPCC staff that if he continued to pursue the grievance process, he would face retaliation in the form of "harsh solitary confinement or placement in a dangerous pod;" and

- He was barred from pursuing the administrative remedies required by the PLRA due to prison officials' intimidating him and refusing to provide him a grievance form.

(ECF No. 15-6). For the same reasons outlined as to Plaintiffs Smith and Hicks, the Court should likewise conclude that Plaintiff Hernandez has satisfied his burden under *Tuckel*.

Finally, Plaintiff Saldivar states:

- He was subjected to prolonged confinement in a shower stall at GPCC;

- Five to seven times he attempted to obtain a grievance form to complain about the incident, but he never received a form;

- GPCC correctional officers warned him that complaining about these conditions "would result in retaliation, including the possibility of confinement in the same or worse conditions;" and

- Due to the denial of grievance forms and the threats made against him, he was unable to access the administrative remedies that are required under the PLRA.

(ECF No. 15-7). For the same reasons outlined as to Plaintiffs Smith, Hicks, and Hernandez, the Court should likewise conclude that Plaintiff Saldivar has satisfied his burden under *Tuckel*.

### D. Summary

Based on Defendants' affirmative defense that none of the Plaintiffs had exhausted their administrative remedies prior to filing this lawsuit, the burden shifted to the Plaintiffs' to prove that administrative remedies were "unavailable." Plaintiffs have submitted affidavits to the effect that they requested grievance forms, but none were readily given; and they were threatened with extended solitary confinement if they attempted to pursue grieving the issues internally. Except for Plaintiff Johnson, the Court should find that the affidavits, corroborated by an affidavit from Ms. Fleissner describing "a persistent culture of intimidation against inmates who attempted to report mistreatment or file grievances. . . fac[ing] threats and retaliation from . . . staff" create genuine disputes of fact regarding whether the grievance process was "available" to Plaintiffs. Accordingly, the Court should deny Defendants' Motion for Summary Judgment on the issue of non-exhaustion of administrative remedies to all Plaintiffs with the exception of Plaintiff Johnson.

## IV. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Court should grant Defendants' Motion for Summary Judgment regarding non-exhaustion of administrative remedies, but only as to Plaintiff Johnson. As to the remaining Plaintiffs, the Court should deny summary judgment and conclude that administrative remedies were effectively unavailable to them.

The parties are hereby advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **October 25, 2024**. *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives

the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## V. STATUS OF THE REFERRAL

This Report and Recommendation does not terminate the referral from the District Judge in this matter.

ENTERED on October 11, 2024.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE