IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Daniel Saldivar, Michael Wolfe, Zurrell Hernandez, Christopher Hicks, Ronnie Smith II, Larry Pruitt, Robert D. Johnson<br><br>Plaintiff,<br><br>vs.<br><br>Oklahoma Department of Corrections, Steven Harpe, Director, Oklahoma Department of Corrections, in his official and individual capacities; John/Jane Doe I, II, III, IV, (Employees/Agents of GPCC/DOC), in their official and individual capacities; John/Jane Doe V, VI, (Shift Supervisors and Administrators of GPCC), in their official and individual capacities,<br><br>Defendants. | Case No.: CIV-24-442-PRW<br>(Removed from Oklahoma County District Court Case No: CJ-2024-2320) |

**RESPONSE TO DEFENDANTS'
OBJECTION TO REPORT AND RECOMMENDATION**

The Plaintiffs, Daniel Saldivar, Michael Wolfe, Zurrell Hernandez, Christopher Hicks, Ronnie Smith II, and Larry Pruitt, through their undersigned counsel, hereby file this Response to the Defendants' Objection to the Report and Recommendation of the Magistrate Judge in relation to the Defendants' Motion for Summary Judgment.

I. **Standard of Review and Summary Judgment**

The Report and Recommendation correctly applied the standard of review for summary judgment, focusing on genuine disputes of material fact without altering the standard due to representation by counsel. While Magistrate Judge Shon T. Erwin mentioned in passing the standard to be applied for *pro se* litigants, he ultimately adhered to the summary judgment standard applicable to all represented parties. The Magistrate Judge's decision did not liberally

construe the Plaintiffs' pleadings or afford them special leniency. Judge Erwin's analysis relied on the proper standard of review for summary judgment under Federal Rule of Civil Procedure 56, without affording any unique concessions. He evaluated each of the Plaintiff's evidence and arguments according to the standard that genuine disputes of material fact preclude summary judgment, irrespective of whether a party is represented or *pro se*. Judge Erwin correctly stated that a party opposing summary judgment must "cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor," *see* Report, p. 1, and he adhered to this rule throughout his decision.

In effect, the Report recommends the dismissal of Plaintiff Johnson's claims due to insufficient evidence and vague allegations, noting that his statements were "conclusory" and lacked necessary detail or corroboration. Johnson's dismissal shows the Report's adherence to a rigorous standard, emphasizing that unsupported allegations cannot create a genuine issue of material fact. Regarding the remaining Plaintiffs, Judge Erwin found that they had provided detailed, specific accounts of intimidation and obstruction that met the dual burden under *Tuckel v. Grover*, 660 F.3d 1249, 1253-54 (10th Cir. 2011). The Plaintiffs demonstrated not only that they were deterred but also that a reasonable inmate would have been similarly deterred, thus presenting genuine issues for trial on the availability of administrative remedies. The fact that Judge Erwin dismissed Johnson's claims shows he did not employ a liberal construction of the pleadings but rather strictly evaluated whether the evidence presented could meet the legal burden. Thus, the Defendants' objection to the standard of review lacks merit, as the Report appropriately analyzed summary judgment within the bounds of established legal standards.

### II.     Existence of Genuine Issues of Material Fact in Exhaustion of Remedies

The Defendants incorrectly assert that the Plaintiffs failed to create a genuine issue of material fact on exhaustion. The Plaintiffs have shown detailed, documented deterrence from accessing administrative remedies, meeting both subjective and objective components under *Tuckel*. Plaintiff Wolfe reports being threatened explicitly by CO Tandy that pursuing grievances would make his "situation dangerous," as well as experiencing physical retaliation in the form of gang rape after being confined in a shower stall for days, with no subsequent PREA-compliant investigation of the assault. *See* Wolfe Decl. at ¶¶2-5. Similarly, Plaintiff Pruitt details that CO Tandy threatened him with solitary confinement if he pursued a grievance regarding his confinement in the showers, and he was consistently denied grievance forms despite repeated requests. *See* Pruitt Decl. at ¶¶1-5. Plaintiff Smith describes being dissuaded from filing grievances due to the consistent denial of forms and the severe consequences threatened if he pursued complaints. *See* Smith Decl. at ¶¶2-4. Plaintiff Hernandez, like others, recounts being intimidated by correctional officers who warned that filing grievances would lead to prolonged solitary confinement, a threat that effectively blocked his access to the grievance process. *See* Hernandez Decl. at ¶¶2-5. Plaintiff Hicks was similarly denied grievance forms, requesting them over ten times without success, and faced continuous threats of retaliation, which deterred him from filing formal complaints. *See* Hicks Decl. at ¶¶2-4. Additionally, Plaintiff Saldivar reports a pattern of staff intimidation, with officers implying that pursuing grievances would worsen his confinement conditions, ultimately leaving him without meaningful access to the grievance process. *See* Saldivar Decl. at ¶¶1-5. These consistent accounts demonstrate the pervasive intimidation, denial of forms, and suppression of grievances within the facility, underscoring that genuine issues of material fact remain regarding the availability of administrative remedies and

the deterrence from pursuing them, thus precluding summary judgment. Given these substantial and specific claims, the Court should uphold the Report's conclusion that genuine issues of material fact exist on the availability of administrative remedies for all the Plaintiffs except Johnson.

**III.     Analysis of *Escobar v. Mora* and Related Precedent**

The Defendants' reliance on *Escobar v. Mora*, 496 F.App'x 806, 809-10 (10th Cir. 2012), and similar cases overlooks the evidence of targeted threats and significant deterrence the Plaintiffs faced, which distinguish their situation from that in *Escobar*. In *Escobar v. Mora*, the nature of threats and the types of complaints Escobar tried to lodge differed significantly from those experienced by the Plaintiffs here. In *Escobar*, the threats Escobar claimed were vague and generalized, lacking evidence of specific acts that deterred him from filing grievances. *Id.* at 809. Additionally, Escobar's complaints focused on his dissatisfaction with meal conditions and other non-life-threatening issues, not systemic abuse or violence. *Id.* at 812. In contrast, the Plaintiffs in this case provide specific, corroborated accounts of targeted intimidation by ODOC staff, who actively discouraged or outright blocked access to grievance forms, often through direct threats and retaliation. For example, CO Tandy warned Plaintiff Wolfe that pursuing a grievance would result in "dangerous" consequences. Wolfe Decl. at ¶3. Plaintiff Pruitt was threatened with solitary confinement if he filed grievances. Pruitt Decl. at ¶¶1-5. These declarations establish a tangible and immediate deterrent effect, creating genuine issues regarding the availability of administrative remedies that were absent in *Escobar*. Therefore, the Defendants' reliance on *Escobar* fails to account for the more severe, targeted threats in this case, which more effectively thwarted the Plaintiffs' attempts to exhaust administrative remedies.

The case here is likewise distinguishable from *May v. Segovia*, 929 F.3d 1223 (10th Cir. 2019), due to the nature of the alleged deterrents and availability of grievance procedures in each situation. *Id.* at 1226. In *May*, the plaintiff alleged – without any evidence – that administrative remedies were unavailable because prison staff tampered with inmate mail. *Id.* at 1235. However, the court noted that despite these allegations, May filed numerous other grievances, undermining the claim that remedies were unavailable. Id. at 1235. Crucially, in *May*, there was no substantial evidence that any threats or impediments actively deterred him from using the grievance system for his SHU placement issue. *Id.* Therefore, the Court should find that the case law the Defendants have cited fails to preclude the Plaintiffs' showing of unavailability and deny summary judgment for all the Plaintiffs except Johnson.

**IV.     Evaluation of Corroborating Evidence from Former DOC Employee's Affidavit**

The Report rightly considered the former DOC employee's affidavit as corroborating evidence, adding credibility to the Plaintiffs' claims of systemic intimidation, which comports with standards requiring probative evidence at summary judgment. The systematic mishandling of grievances at the Great Plains Correctional Center ("GPCC"), as documented in Ms. Jeanette Fleissner's affidavit, demonstrates a pervasive breakdown in the facility's grievance process that aligns with the Plaintiffs' accounts of obstruction and deterrence. The routine discarding of complaints reported by Ms. Fleissner. Fleissner Decl. at ¶4. effectively barred inmates from pursuing administrative remedies, as these grievances were not afforded the proper review or response.

Moreover, the Declaration of Chairman Justin (J.J.) Humphrey underscores the systemic nature of these issues across the Oklahoma Department of Corrections (ODOC). Humphrey's insights into the broader ODOC culture reveal a consistent failure to respond to inmate

grievances regarding critical matters, including health and safety, which underscores the systemic unavailability of the grievance process. Humphrey Decl. at ¶4. His statements indicate a pervasive culture of intimidation within the DOC, which deters inmates and even correctional staff from reporting abuses, as whistleblowers face retaliation. Humphrey Decl. at ¶5. Given the corroborative weight of this affidavit, the Court should adopt the Report's finding that the Plaintiffs have substantiated their claims of an unavailable grievance process, justifying the denial of summary judgment for all the Plaintiffs, except Plaintiff Johnson.

V.     **Effect of the Plaintiffs' Transfers on Exhaustion Claims**

The Defendants' argument that facility transfers negate the Plaintiffs' claims of unavailable remedies disregards the persistence of deterrent threats at GPCC, which effectively barred the Plaintiffs from utilizing the grievance process before their transfers. The Defendants' contention that the Plaintiffs' transfers nullify their claims of unavailable administrative remedies fails to account for the substantial evidence showing that the Plaintiffs were effectively barred from accessing the grievance process before their transfers due to systemic deterrent threats at GPCC. The Supreme Court in *Ross v. Blake*, 578 U.S. 632, 644 (2016), has held that an administrative remedy is "unavailable" when it is thwarted by "machination, misrepresentation, or intimidation." Here, Plaintiffs' affidavits and corroborating witness declarations describe consistent threats and retaliation that made the grievance process a risky and unrealistic avenue for relief.

In *Tuckel*, the Tenth Circuit included dicta that, for the objective inquiry, courts should consider whether the plaintiff is "no longer held in the prison in which he experienced retaliatory violence," as a factor in assessing the availability of administrative remedies. *Tuckel*, 660 F.3d 1249, 1254. This statement suggests that if an inmate has left the facility where intimidation or

threats occurred, it may weigh against finding that the grievance process remains "unavailable." The logic behind this reasoning lies in the assumption that threats or intimidation would no longer have a deterrent effect on an inmate who has been removed from the immediate environment of the alleged retaliatory actors or practices, thus theoretically enabling the inmate to engage with the grievance process without fear.

However, this rationale is inapplicable to the inmates previously held at GPCC. The transfers of these inmates occurred well after the applicable grievance period had expired, meaning that they were prevented from exhausting their remedies during the critical time frame when they were still at GPCC and directly exposed to the intimidation and deterrent conditions.[1] Without timely access to a functional grievance process due to threats and other obstructions, the transfer itself does not retroactively create an opportunity to exhaust remedies that were unavailable within the requisite period. Because the transfers happened only after the window for filing grievances had closed, the deterring obstacles at GPCC – established through persistent threats and documented interference with grievances – remained in effect during the entire grievance period. Therefore, *Tuckel's* dicta on transfer and the reasoning that a new facility may reduce deterrence is not relevant to these the Plaintiffs. Consequently, the Court should reject the

---

[1] In their original Motion for Summary Judgment, the Defendants did not request dismissal based on the fact that some Plaintiffs were transferred out of GPCC. Instead, the primary argument was centered on the Plaintiffs' failure to exhaust administrative remedies as required under the PLRA. The Defendants mentioned the Plaintiffs' current housing assignments and transfers only as part of the factual background. The transfers were not presented as a basis for summary judgment dismissal, nor did the MSJ rely on transfers as a legal argument to dismiss any of the claims. Because the date of transfer was never raised as a central issue in the case, the record lacks specific evidence regarding the exact dates on which the Plaintiffs were transferred out of GPCC. However, the available information indicates that some of the Plaintiffs (*e.g.*, inmate Pruitt) submitted unsuccessful requests related for a transfer at the end of August 2023, which means that the actual transfer fells well outside the 7-day period following the shower confinement incident, within which a grievance was required to be initiated. This timeline suggests that any grievances concerning the shower incidents occurring post-transfer would not have been timely, thereby undermining the Defendants' reliance on transfers to negate the Plaintiffs' claims of an unavailable grievance process at GPCC.

Defendants' transfer argument as irrelevant to the established, credible evidence of the Plaintiffs' deterrence at GPCC, and uphold the denial of summary judgment except for Plaintiff Johnson.

## Conclusion

The Defendants' objections fail to refute the Report's well-supported findings that administrative remedies were unavailable to the Plaintiffs due to documented threats and consistent obstruction by GPCC staff. For these reasons, the Court should adopt the Report and Recommendation in full, granting summary judgment only for Plaintiff Johnson and denying it for all other Plaintiffs.

Dated: November 13, 2024.
Respectfully submitted,

Richard C. Labarthe, OBA # 11393

Alexey V. Tarasov, OBA # 32926
LABARTHE & TARASOV, a professional association

1000 W. Wilshire Blvd., Suite 355
Oklahoma City, Oklahoma 73116
(405) 843-5616 Telephone
(405) 843-9685 Facsimile
richard@labarthelaw.com

330 W. Gray Street, Suite 208
Norman, OK 73069
(405) 410-5631 Telephone
(832) 558-3540 Facsimile
alexey@tarasovlaw.com

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 13, 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent to the following who are ECF registered participants:

      Lauren Ray, OBA# 22694
      Lexie P. Norwood, OBA# 31414
      Assistant Attorney General
      Oklahoma Attorney General's Office
      Litigation Section
      313 NE 21st Street
      Oklahoma City, OK 73105
      Email: lauren.ray@oag.ok.gov
      Email: lexie.norwood@oag.ok.gov
      **Attorneys for Defendants**

*/s/ Alexey Tarasov*

Alexey V. Tarasov, OBA # 32926
330 W. Gray Street, Suite 208
Norman, OK 73069
(405) 410-5631 Telephone
(832) 558-3540 Facsimile
alexey@tarasovlaw.com