IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DANIEL SALDIVAR et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-24-442-PRW** |
| | ) | |
| OKLAHOMA DEPARTMENT OF | ) | |
| CORRECTIONS et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiffs filed this action under 42 U.S.C. § 1983 alleging civil rights violations. (ECF No. 1-2). Before the Court is the Motion to Dismiss filed by the Oklahoma Department of Corrections ("ODOC") and Steve Harpe. (ECF No. 27). Plaintiff has filed a Response, to which Defendants have replied. (ECF. Nos. 28 & 29, respectively). United States District Judge Patrick R. Wyrick referred the matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). For the following reasons, it is recommended the Motion to Dismiss be **GRANTED in part and DENIED in part.**

## I.    PLAINTIFFS' ALLEGATIONS

Plaintiffs are convicted state prisoners who have sued Defendants under 42 U.S.C. §§ 1981 and 1983, seeking to recover damages allegedly suffered in violation of the Eighth and Fourteenth Amendments while incarcerated at the Great Plains Correctional Center ("GPCC") in Hinton, Oklahoma. Plaintiffs name the following as Defendants in this

matter: ODOC, ODOC Director Steven Harpe in his individual and official capacities, John/Jane Doe I-IV, who are GPCC and ODOC employees, in their individual and official capacities, and John/Jane Doe V-VI, who are GPCC shift supervisors and administrators, in their individual and official capacities. *Id.* at 4.

In the Complaint,[1] Plaintiffs alleged they were inhumanely confined in shower stalls on various occasions in August 2023. (ECF No. 1-2:1-3, 5-8). Plaintiffs described being held in these stalls for extended periods, during which they were not allowed restroom breaks but were instead forced to relieve themselves in the shower stalls in which they were held. They did not typically have access to water, other than the scalding hot water in the showers, and no drinking containers. *Id.*

Plaintiffs' individual allegations are as follows:

- Plaintiff Daniel Saldivar alleges that Defendant Doe(s) held him in a shower stall without clothing and forced him to stand in his own waste for four nights. When Plaintiff asked Defendant Doe(s) why they had placed him in these conditions, he heard Defendant Doe tell another GPCC employee, "He's a sex offender." While being confined in a shower stall, Plaintiff Saldivar was aware of at least two other inmates in adjacent shower stalls being held in similar conditions. After a fellow inmate provided Plaintiff Saldivar a shirt, he used it in to attempt suicide, which prompted GPCC officials to finally remove him from the shower stall;

- Defendant Doe(s) placed Plaintiff Michael Wolfe, who already faced mental health challenges and had previously attempted suicide on two occasions, in the same conditions for two nights in August;

---

[1] Because Plaintiffs initially filed this case in state court, Plaintiffs' pleading is denominated a petition. (ECF No. 1-2). In keeping with federal practice, the Court will refer to it as a complaint. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

- Defendant Doe(s) placed Plaintiff Zurrell Hernandez in a shower stall on three occasions for twenty-four-hour periods. Defendant Doe(s) also pepper-sprayed Plaintiff Hernandez prior to one of those confinements;

- Defendant Doe(s) confined Plaintiff Larry Pruitt in the Special Housing Unit ("SHU") for weeks without sheets, blankets, a mattress, and electricity, while also failing to provide sufficient food and water. Defendant Doe(s) also placed him in a shower stall for an extended period and sprayed him with pepper spray while confined therein;

- Defendant Doe(s) held Plaintiff Ronnie Smith, II, in a 2' x 2' space for forty-two hours; and

- Defendant Doe(s) locked Plaintiff Christopher Hicks in a shower stall for thirty-six hours in mid-August, while also failing to provide sufficient food and water.

*Id.* at 1-3, 5-7.

Plaintiffs contend that some GPCC employees ended their employment based on the conditions under which these Plaintiffs and other inmates were held. *Id.* at 8. Plaintiffs also stated that GPCC and ODOC management attempted to intimidate GPCC employees who tried to report the conditions through the submission of incident reports and/or who refused to participate in confining inmates under the described conditions. *Id.*

An internal investigation conducted by Agent Joey Bales of the Office of Inspector General revealed that the use of shower stalls in the manner described in the Complaint was a "common procedure across multiple ODOC facilities." *Id.* at 9-10. Following the investigation, "changes were implemented at the GPCC, discontinuing the use of shower cells for temporary holding of inmates and ensuring proper documentation for inmates sent to" certain areas. *Id.* at 10.

Pursuant to 42 U.S.C. §§ 1981 and 1983, Plaintiffs assert claims under the Eighth and Fourteenth Amendments alleging that the conditions of confinement at GPCC violated their constitutional rights. *Id.* at 10-14. Defendants ODOC and Harpe have filed the current Motion arguing certain of Plaintiffs' claims against them should be dismissed for failure to state a claim upon which relief can be granted. (ECF No. 27).

## II.    STANDARD OF REVIEW

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6). Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to survive a motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

The "plausibility" standard announced in *Twombly* and *Iqbal* is not considered a "heightened" standard of pleading, but rather a "refined standard," which the court of appeals has defined as "refer[ring] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then

the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191 (citing *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (additional quotation marks omitted)). The Tenth Circuit has noted that the nature and specificity of the allegations required to state a plausible claim will vary based on context. *Robbins*, 519 F.3d at 1248. "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Khalik*, 671 F.3d at 1191 (quoting *Robbins*, 519 F.3d at 1247).

Accordingly, in deciding *Twombly* and *Iqbal*, there remains no indication the Supreme Court "intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* (citing *Iqbal*, 556 U.S. at 678). It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted

when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Iqbal*, 556 U.S. at 679.

## III.  ODOC'S REMOVAL TO FEDERAL COURT DID NOT WAIVE ITS SOVEREIGN IMMUNITY AGAINST LIABILITY.

Defendant ODOC requests dismissal of Plaintiffs' claims seeking monetary damages and retrospective injunctive relief based on Eleventh Amendment immunity. (ECF No. 27:7-9). "Because state sovereign immunity is a threshold jurisdictional issue, [the Court] must address it first when it is asserted by a defendant." *Brockman v. Wyo. Dep't of Fam. Servs.*, 342 F.3d 1159, 1163 (10th Cir. 2003) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

"When a plaintiff sues a State in federal court, the State can invoke two immunities: (i) Eleventh Amendment immunity from suit, which is a jurisdictional bar that prevents a federal court from hearing the case; and (ii) sovereign immunity from liability, which is a substantive defense." *Lowrey v. Mosley*, No. CIV 23-0868 JB/JMR, 2024 WL 4348165, at *32 n.5 (D.N.M. Sept. 30, 2024) (citing *Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014)). Sovereign immunity from liability provides immunity for "both money damages and [retrospective] injunctive relief." *Lay v. Okla. Dep't of Corr.*, No. CIV-24-1027-F, 2024 WL 5330031, at *2 (W.D. Okla. Dec. 20, 2024) (citing *Ellis v. Univ.*

*of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998)).[2] ODOC, as an agency of the State of Oklahoma, is treated as an "arm of the state" for purposes of Eleventh Amendment immunity. *Berry v. Oklahoma*, 495 F. App'x 920, 922 (10th Cir. 2012) ("ODOC is [] shielded by sovereign immunity because it is an arm of the state.").

In their Response, Plaintiffs contend that by removing this case to federal court, ODOC waived its Eleventh Amendment immunity. (ECF No. 28:11-13). The Tenth Circuit has recognized a distinction between waiving immunity against suit in federal court and waiving immunity against liability. *Trant*, 754 F.3d at 1172. With regard to the former, "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation . . . in a federal forum." *Id.* (quoting *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002)). Thus, courts consider voluntary removal as consent to have the claim heard in a federal forum. Removal does not, however, constitute a waiver of immunity from liability. "[A] state may waive immunity from suit while retaining immunity from liability for monetary damages . . . . [and] does not gain an unfair advantage asserting in federal court an affirmative defense it would have had in state court." *Id.* (citing *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1205-06 (10th Cir. 2002)).

"Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006); *see also* Okla.

---

[2] The law is well-settled that Eleventh Amendment immunity does not extend to claims seeking prospective injunctive relief. *Seminole Tribe v. Florida*, 517 U.S. 44, 73 (1996).

Stat. tit. 51, § 152.1(A) ("The State of Oklahoma does hereby adopt the doctrine of sovereign immunity."). Further, Defendants specifically reserved and did not waive the right to immunity from liability in its Notice of Removal. (ECF No. 1:3). Thus, the Court finds ODOC's removal of the present case did not waive its immunity against monetary damages and retrospective injunctive relief. Accordingly, Plaintiffs' claims against ODOC seeking monetary damages and retrospective injunctive relief should be dismissed without prejudice. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) ("Because Eleventh Amendment immunity is jurisdictional, [] dismissal should have been without prejudice.").[3]

## IV.   THE COURT SHOULD DISMISS WITHOUT PREJUDICE PLAINTIFFS' 42 U.S.C. § 1981 CLAIM FOR FAILURE TO STATE A CLAIM.

Plaintiffs asserted claims under 42 U.S.C. § 1981 against each Defendant alleging violations of Plaintiffs' Fourteenth Amendment rights. (ECF No. 1-2:10-13). To state a plausible claim under § 1981(a), a plaintiff must allege facts demonstrating: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race [or other protected status]; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001). "Section 1981

---

[3] Plaintiffs also state that immunity from liability is not an issue in this matter because their Complaint is "narrowly tailored" to request only prospective injunctive relief. (ECF No. 28:13). The undersigned addresses Plaintiffs' request for injunctive relief further below, but notably, Plaintiffs' requests for relief were not so narrowly tailored as to render the question of sovereign immunity irrelevant.

[defines] four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Shawl v. Dillard's Inc.*, 17 F. App'x 908, 910 (10th Cir. 2001). Presumably, Plaintiffs intend to rely on the fourth protected interest.

A review of the Complaint reveals that Plaintiffs have failed to sufficiently allege a § 1981 claim. First, the Complaint only identified Plaintiff Wolfe's race (Native American) and did not otherwise suggest any other Plaintiff is a member of a protected class. Second, it did not indicate that Defendants discriminated against them based on race or some other protected status or that Defendants' actions were motivated by racial animus.[4] Thus, the undersigned concludes Plaintiffs have not stated any plausible claims under § 1981. Accordingly, the Court should dismiss without prejudice Plaintiffs' claims under 42 U.S.C. § 1981 for failure to state a claim upon which relief could be granted.

---

[4] The Response specifies the race of three Plaintiffs in addition to Plaintiff Wolfe. (ECF No. 28:15). These facts are not contained within Plaintiffs' Complaint and therefore, the Court will not consider them herein. *See Ave. Cap. Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 881 (10th Cir. 2016) (noting that when ruling on a Rule 12(b)(6) motion, the court may only "rely on (1) the facts alleged in the complaint and (2) the central documents referenced in the complaint"). Notably, had Plaintiffs included the race related information in the Complaint, it is unlikely it would have been sufficient to support their § 1981 claims because their failure to suggest Defendants were motivated by racial animus remains.

**V.    PLAINTIFFS WOLFE, PRUITT, HERNANDEZ, AND HICKS HAVE SUFFICIENTLY ALLEGED EIGHTH AMENDMENT CLAIMS.**

Defendants request dismissal of Plaintiffs Wolfe, Pruitt, Hernandez, and Hicks' Eighth Amendment claims, arguing that they "fail to allege enough information in the Complaint to satisfy *Twombly*." (ECF No. 27:4). The undersigned disagrees.

### A.    LEGAL STANDARDS FOR EIGHTH AMENDMENT CLAIMS

Under the Eighth Amendment, prison officials must "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). However, the Eighth Amendment's prohibition on cruel and unusual punishment "'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To state a "conditions of confinement" claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is "sufficiently serious" to implicate constitutional protection, and (2) prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

To satisfy the objective requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *DeSpain v.*

*Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). In reviewing the seriousness of a condition, a court necessarily relies on the particular facts of each situation, including the "circumstances, nature, and duration" of the challenged condition. *Id.* at 974. While not dispositive, the length of exposure to the hazardous condition is "of prime importance." *Id.* To satisfy the subjective requirement, the plaintiff must present evidence of the prison official's "culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1173 (10th Cir. 2021); *see Farmer*, 511 U.S. at 837 (holding deliberate indifference exists only when the defendant "knows of and disregards an excessive risk to inmate health or safety").

### B.    PLAINTIFFS' CLAIMS

In the present case, Defendants only challenge the objective component of the four Plaintiffs' Eighth Amendment claims. (ECF No. 27:4-5). They first argue that Plaintiffs Wolfe, Pruitt, Hernandez, and Hicks failed to identify when the factual allegations underlying their claims occurred. Specifically, they assert that Plaintiffs Pruitt and Hernandez provided no dates and that Plaintiffs Wolfe and Hicks stated only that the subject events occurred in "August." *Id.* Reading the Complaint as a whole, it is clear Plaintiffs alleged the events underlying their claims occurred during or near August 2023. (ECF No. 1-2:2-3, 5-7). In a previous Order issued in this case following the Court's screening of the Complaint, Judge Wyrick stated that Defendants "allege that they were inhumanely confined in shower stalls on various occasions in August of 2023." (ECF No.

22:1). Thus, Defendants' argument that the Complaint does not sufficiently identify when the challenged actions occurred is without merit.

Defendants next contend that in asserting his Eighth Amendment claim, Plaintiff Pruitt failed to provide any "defining facts which would give to notice to what events [he] is referring." (ECF No. 27:4). This is simply inaccurate. Plaintiff Pruitt alleged that for "weeks" while confined in the SHU, Doe Defendant(s) deprived him of sheets, blankets, a mattress, sufficient food and drink, and electricity. (ECF No. 1-2:7). He also stated that Doe Defendant(s) placed him in a shower stall for an "extended time period" and while he was confined therein, sprayed him with pepper spray. *Id.* These allegations are sufficient to support Plaintiff Pruitt's Eighth Amendment claim and provide Defendants with fair notice of his claims. *See Allen v. Avance*, 491 F. App'x 1, 1, 4-5 (10th Cir. 2012) (holding that a pre-trial detainee had sufficiently alleged an Eighth Amendment conditions of confinement claim based on placement in an isolation cell for twelve days without bedding, mattress, or toiletries); *Jaquez v. Lawton Corr. Facility*, No. CIV-11-1066-F, 2013 WL 2645589, at *11-12 (W.D. Okla. June 12, 2013) (denying the defendant's motion to dismiss the plaintiff's Eighth Amendment claim where the plaintiff alleged that for sixteen days he was deprived of sheets or blankets, hygiene items, clean clothes, and writing supplies); *see also, cf., Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (holding that prison officials must provide "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e. hot and cold water, light, heat, and plumbing)").

Similarly, Defendants argue that Plaintiff Hernandez provides "no . . . defining facts" to support his claims. (ECF No. 27:4). On the contrary, Plaintiff Hernandez states that Defendant Doe(s) locked him "in the shower stall three times for a 24-hour period" and that he "suffered due to inadequate provisions in the shower, including encountering issues with scalding hot water and a lack of any cup or other vessel for drinking." (ECF No. 1-2:7). He also explains that on one occasion, Defendant Doe pepper-sprayed him prior to placing him in a shower stall. *Id.* Thus, contrary to Defendants' assertion, Plaintiff Hernandez provided "defining facts" regarding the mistreatment he suffered.

Though the sufficiency of Plaintiff Hernandez's claim is established, it is notable that being locked in a shower stall for a twenty-four-hour period would likely result in him standing in his own waste, like other Plaintiffs. The Tenth Circuit has stated that "exposure to human waste carries particular weight in the conditions [of confinement] calculus." *DeSpain*, 264 F.3d at 974 (citing *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (finding "sufficiently serious conditions of confinement" where inmate in feces-covered cell for three days); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) ("[C]ourts have been especially cautious about condoning conditions that include an inmate's proximity to human waste")). "Exposure to human waste, like few other conditions of confinement, evokes . . . the more general standards of dignity embodied in the Eighth Amendment." *Id.* (citing *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) ("[U]nquestionably a health hazard" to live in "filthy water contaminated with human waste"); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2nd Cir. 1972) ("Causing a man to

live, eat, and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.")).

Plaintiffs Wolfe, Pruitt, Hernandez, and Hicks sufficiently indicated when the events underlying their claims occurred, and Plaintiffs Pruitt and Hernandez provided "defining facts" giving notice to Defendants as to the bases for each their claims. Accordingly, the Court should deny Defendants' request to dismiss these Plaintiffs' Eighth Amendment claims.

## VI. THE COURT SHOULD DISMISS WITHOUT PREJUDICE PLAINTIFFS' CLAIMS AGAINST DEFENDANT HARPE IN HIS INDIVIDUAL CAPACITY FOR FAILURE TO STATE A CLAIM.

### A. QUALIFIED IMMUNITY

Defendant Harpe in his individual capacity contends that he is entitled to qualified immunity against Plaintiffs' claims. (ECF No. 27:10-13).[5] "The doctrine of qualified immunity shields officials [in their individual capacity] from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 757

---

[5] Though Defendant Harpe did not specifically limit his request for qualified immunity to Plaintiffs' individual capacity claims, the law is well established that qualified immunity is applicable only to claims against officers in their individual capacity. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1233 (10th Cir. 2004) ("Qualified immunity applies to claims for monetary relief against officials in their individual capacities, but it is not a defense against claims for injunctive relief against officials in their official capacities.").

(10th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "[A] defendant's assertion of qualified immunity from suit under 42 U.S.C. § 1983 results in a presumption of immunity." *Id.* at 757. That presumption of qualified immunity can be overcome by a plaintiff "only by showing that (1) the officers' alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Id.* (alteration incorporated) (internal quotation marks omitted). The Court "may exercise [its] discretion as to which prong to address first." *Id.* at 758 (citing *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)). Here, Defendant Harpe seeks to invoke qualified immunity solely on the first prong, i.e. that Plaintiffs did not sufficiently allege a constitutional violation. (ECF No. 27:10-11).

### B.    SUPERVISORY LIABILITY

Plaintiffs did not allege Defendant Harpe participated directly in the events underlying their constitutional violations. Instead, their claims against him in his individual capacity are based on a theory of supervisory liability. (ECF No. 1-2:13-14). In order to establish a supervisory liability claim, Plaintiffs must allege: "(1) personal involvement[,] (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). "Under the first element, the plaintiff 'must show an affirmative link between the supervisor and the constitutional violation.'" *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019) (additional internal quotation marks omitted) (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)). "The

plaintiff can show such a link by establishing 'the supervisor promulgated, created, implemented, or possessed responsibility for the continued operation of a policy,' *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011), or the establishment or utilization of an unconstitutional policy or custom, provided the policy or custom resulted in a violation of the plaintiff's constitutional rights." *Burke*, 935 F.3d at 997 (alterations incorporated) (additional internal quotation marks and citation omitted).

Also, as Plaintiffs are asserting Eighth Amendment violations, they must satisfy the third element by alleging Defendants acted with deliberate indifference. *See Montoya*, 662 F.3d at 1164 (explaining that to establish the third element of supervisory liability, "a plaintiff must show that . . . '[the defendant] acted with the state of mind required to establish the alleged constitutional deprivation.'" (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)). The Tenth Circuit has explained that a supervisor "is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Schneider*, 717 F.3d at 769 (citation omitted).

In support of their claim, Plaintiffs contend "Supervisory Defendants," which presumably include Defendant Harpe, "exercised control and discretion over other Defendants who ignored or facilitated the neglect and abuse of inmates[] . . . [and] failed to properly discipline and supervise employees or subcontractors who engaged in these actions and were aware of these violations of [Plaintiffs'] constitutional rights." *Id.* at 13.

They further alleged Defendant Harpe "promulgated, created, implemented, and/or utilized policies that caused" the challenged actions, while he knew or should have known that "maintaining these policies, practices, and widespread customs, and failing to train and supervise staff properly, would result in violations similar to those experienced by [] Plaintiffs." *Id.* at 14.

### 1.    FAILURE TO TRAIN OR SUPERVISE[6]

Although Plaintiffs alleged Defendant Harpe failed to properly train and supervise GPCC employees, they failed to offer a single factual allegation suggesting that he, as ODOC Director, trains or supervises GPCC employees or officials. This is fatal to their claims. *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006) (explaining that "failure to supervise is only actionable under § 1983 against a defendant who had a duty to supervise" and affirming summary judgment in favor of the Colorado Department of Corrections ("CDOC") Director of Prisons because evidence indicated he did not directly supervise the special operations response team ("SORT"), which allegedly violated the plaintiff's constitutional rights[7]); *Bryson v. Macy*, 611 F.Supp.2d 1234, 1261-62 (W.D. Okla. Apr. 30, 2009) (granting summary judgment against the plaintiff's failure to supervise claim in favor of defendant district attorney where the plaintiff failed to create

---

[6] The Tenth Circuit treats failure to train and failure to supervise claims "the same way." *Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006).

[7] Likely similar to the present case, in *Serna*, the court explained that "the SORT team was supervised by an on-site commander, who reported to the Deputy Director of Prisons, who then reported to [the CDOC Director]"). *Id.*

a genuine issue of material fact as to whether the district attorney supervised Oklahoma City Police Department's forensic chemist). As Plaintiffs failed to allege Defendant Harpe trains or supervises GPCC employees, they have not plausibly asserted that he violated their constitutional rights in this regard.

### 2.    FAILURE TO CREATE OR IMPLEMENT POLICIES TO AVOID HARM

Plaintiffs also argue that Defendant Harpe knew or should have known of the constitutional violations occurring at GPCC and failed to create or implement policies to stop the same.  (ECF No. 1-2:11) ("[T]he DOC Director . . . knew or should have known that the conditions of confinement in the [] shower cells were inhumane, cruel, and unusual, posing a significant risk to mental and physical well-being of [] Plaintiff[s]."); *id.* at 13 ("[The Supervisory Officials] were aware of these violations of inmates' constitutional rights."); *id.* at 14 ("The Supervisory Officials disregarded these known risks to inmates, including [] Plaintiffs, and acquiesced in the continuation of such practices."); (ECF No. 28:7-8) ("Harpe's failure to act in the face of known risks is not a case of simple non-involvement but of direct responsibility for systemic conditions that violated constitutional rights. . . . Plaintiffs . . . specifically allege that Harpe was aware or should have been aware of the unconstitutional conditions due to his role and responsibilities."); *id.* at 10 ("Harpe's deliberate indifference to the known risks posed by these conditions is demonstrated by his inaction and failure to enforce appropriate policies."). Plaintiffs' claims fail, however, because their factual allegations do not sufficiently suggest Defendant Harpe knew of the conditions and acted with deliberate indifference.

As previously noted, the Tenth Circuit has explained that deliberate indifference may lie where a supervisor "deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Schneider*, 717 F.3d at 769 (citation omitted). However, "conclusory allegation[s] that Defendant [Harpe] 'knew or should have known' of the alleged incidents is insufficient to show supervisory liability." *Herrington v. El Paso Cnty. Sheriff's Off.*, No. 23-CV-01533-LTB-SBP, 2024 WL 5323675, at *2 (D. Colo. Jan. 31, 2024), *report and recommendation adopted*, 2024 WL 5323671.

Plaintiffs have not offered any allegations indicating how or why Defendant Harpe was aware of the unconstitutional conditions occurring at GPCC, instead merely repeating that he knew or should have known about them. (ECF No. 1-2:11, 14). Courts have consistently held that conclusory statements constitute mere recitations of general legal principles as opposed to plausible allegations substantiating Plaintiffs' claims. *See Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1289 (10th Cir. 2019) (finding that a plaintiff failed to allege municipal liability, where the complaint merely "allege[d] in conclusory fashion that Denver knew or should have known that its employees were inadequately supervised")[8]; *Carey v. Buitrago*, No. 1:19-CV-02073-RM-STV, 2020 WL 3620324, at *11

---

[8] While *Waller* addresses municipal liability, the Tenth Circuit has recognized that "the same deliberate indifference standard applies to claims against individuals [for supervisory liability] and municipalities themselves." *Pigeon v. City of Okla. City*, No. 22-6033, 2022 WL 17660539, at *4 (10th Cir. 2022) (internal quotation marks omitted) (citing *Burke*, 935 F.3d at 999 (holding that where "supervisory liability and municipal liability" claims both required showing "deliberate indifference," "the elements for supervisory and municipal liability [were] the same")).

(D. Colo. Mar. 18, 2020) (dismissing the plaintiff's supervisory liability claim because he "merely states that Sergeant Casias knew Plaintiff had glass in his mouth, but how Sergeant Casias would have known this information is far from clear in the Amended Complaint"), *report and recommendation adopted*, 2020 WL 1921756; *Yocum v. Utah*, No. 1:16-cv-00098, 2017 WL 448586, at *7 (D. Utah Feb. 2, 2017) (finding allegations that defendant supervisors "knew or should have known that 'the wrongs in this matter were about to be (or were being) committed;' they 'had the power to prevent and/or aid in the prevention' of the constitutional violations; and because they 'approved or ratified' the conduct of the police officers . . . [did] nothing more than state the elements; thus these are not factual allegations entitled to the presumption of truth.").

Similar to *Carey* and *Yocum*, though Plaintiffs repeatedly state Defendant Harpe knew or should have known of their unconstitutional conditions of confinement, they failed to suggest how Defendant Harpe would have known about the same. As a result, Plaintiffs have not established a constitutional violation and therefore cannot surmount the first part of their burden to overcome qualified immunity. *Margheim v. Buljko*, 855 F.3d 1077, 1090 (10th Cir. 2017). Accordingly, the Court should grant Defendants' Motion in this regard, dismissing Plaintiffs' claims against Defendant Harpe in his individual capacity.

## VII.  PLAINTIFFS SEEK PROSPECTIVE INJUNCTIVE RELIEF.

Defendants request dismissal of Plaintiffs' request for prospective injunctive relief arguing that they are seeking solely retrospective injunctive relief. (ECF No. 27:9-10).

Though they fail to specify, the Court presumes Defendants intended to ask for this dismissal on behalf of ODOC and Defendant Harpe in his official capacity. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Montoya*, 662 F.3d at 1161 n.5; *see also Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991). Thus, Plaintiffs may not seek injunctive relief from state officials, such as Defendant Harpe, in their individual capacity.

Further, "claims against state officials in their official capacity are deemed to be against the state entity the official represents." *Couser v. Gay*, 959 F.3d 1018, 1022 (10th Cir. 2020). Thus, Plaintiffs' claims against Defendant Harpe in his official capacity are deemed to be against ODOC, the state entity with which he is employed. (ECF No. 1-2:4). As previously addressed, the Eleventh Amendment bars federal court jurisdiction over a state agency for both money damages and retrospective injunctive relief," *Lay*, 2024 WL 5330031, at *2, but does not bar claims seeking prospective injunctive relief. *Seminole Tribe*, 517 U.S. at 73. Defendants argue Plaintiffs are seeking solely retrospective, rather than prospective, injunctive relief and therefore, their claims should be dismissed pursuant to the Eleventh Amendment. (ECF No. 27:9-10).

Determining whether a request for injunctive relief is prospective requires a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). Defendants argue that according to the Complaint, "Plaintiffs

are no longer housed in the showers, nor is there any indication that such event would occur again." (ECF No. 27:10). However, Plaintiffs very specifically alleged that the internal investigation revealed housing inmates in shower stalls was a common practice across multiple ODOC facilities, "underscor[ing] the need for policy review and revision. . . within the [O]DOC." (ECF No. 1-2:9, 10). The Complaint explained that following the investigation, "changes were implemented at [] GPCC, discontinuing the use of shower cells for temporary holding of inmates, particularly concerning the treatment of inmates and the use of solitary confinement or similar punitive measures." *Id.* at 10. Given the systemic nature of these practices throughout ODOC facilities, and no indication that the investigation resulted in policy review, revision, or implementation systemwide, Plaintiffs reasonably requested prospective relief in the form of an injunction prohibiting such practices in the future. *Id.* at 15.

The undersigned concludes Plaintiffs' request for equitable relief includes prospective injunctive relief. Accordingly, Defendants' Motion arguing that Plaintiffs have not requested prospective relief and therefore, their requests for injunctive relief should be dismissed in their entirety should be denied.

## VIII.  THE COURT SHOULD DISMISS ODOC AS DUPLICATIVE.

Plaintiff has named both ODOC and Defendant Harpe in his official capacity. As previously discussed, courts construe claims against state officials in their official capacity as claims against the state entity the official represents. *Couser*, 959 F.3d at 1022. Thus, Plaintiffs naming both ODOC and Defendant Harpe in his official capacity is redundant

and unnecessary. Accordingly, the Court should dismiss ODOC as duplicative. Defendant Harpe in his official capacity should remain a party to this lawsuit as a Defendant from whom Plaintiffs seek prospective injunctive relief.

## IX.     RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Based on the foregoing findings, the undersigned recommends Defendants' Motion to Dismiss (ECF No. 27) be **GRANTED in part and DENIED in part**. Specifically, the Court should grant Defendants' Motion by dismissing without prejudice the following claims based on failure to state a claim:

- Plaintiffs' claims against Defendant ODOC and Defendant Harpe in his official capacity seeking monetary damages and retrospective equitable relief;

- Plaintiffs' claims under 42 U.S.C. § 1981; and

- Plaintiffs' claims against Defendant Harpe in his individual capacity.

Additionally, the Court should deny Defendants' Motion regarding the dismissal of:

- Plaintiffs Wolfe, Pruitt, Hernandez, and Hicks' Eighth Amendment claims against the remaining Defendants; and

- Plaintiffs' claims seeking prospective injunctive relief against the remaining Defendants in their official capacities.

The Court should also dismiss ODOC as a duplicative party. Plaintiffs' remaining claims are those asserted under 42 U.S.C. § 1983 alleging Eighth Amendment violations against Defendant Harpe in his official capacity seeking prospective injunctive relief and claims against Defendants John/Jane Does in their individual and official capacities.

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **May 14, 2025**, in accordance with 28

U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## X.    STATUS OF REFERRAL

This Report and Recommendation does not terminate the referral by the District Judge in this matter.

ENTERED on April 30, 2025.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE